# Weil *v.* Hill.

## *Bill for Injunction.*

(Decided June 10, 1915. Rehearing denied June 30, 1915.
69 South. 438.)

1. *Easements; Action; Burden of Proof.*—Where the bill was to restrain the respondent from building on his own lot beyond a certain line, and the complainant relied on an agreement contained in the deed to a respondent, complainant had the burden of showing facts creating an easement over respondent's land.

2. *Same; Appurtenances; Construction.*—Where a land owner granted a parcel to an adjacent proprietor, the deed of conveyance reciting that it was covenanted by the grantee, her heirs, assigns and legal representative, and was made a covenant running with the land, that no structure should be erected within 41½ feet of the street, and that a violation of the covenant should immediately work a reversion to the grantor, their heirs and assigns, but providing that if the residence of the grantors be altered, then this obligation should be by such change in the location, modified so as to

allow the grantee to make similar improvements, an easement appurtenant to the land retained by the owner was created; such right not being in gross or personal to the grantor.

3. *Same; Creation; Words of Inheritance.*—Under the provisions of Section 3396, Code 1907, an easement may be created by a conveyance, although no words of inheritance are expressed.

4. *Covenants; Parties Estopped.*—Although an easement cannot be created ordinarily by reservation or exception, as it does not issue out of the land as a profit, yet where a grantor imposes a condition in the grant affecting the use of other land owned by the grantee, by excepting such grant, the grantee becomes estopped to deny the covenant creating the easement.

5. *Easement; Condition; Effect.*—Where a grantor imposed a condition in the grant which created an easement in other lands owned by the grantee, by estoppel, and this easement was appurtenant to the lands retained by the grantor, and the conveyance provided that the covenant creating the easement should be considered as a condition, and upon a breach the land conveyed should revert, and thereafter the grantor conveyed the property, his grantee might enforce compliance with the easement in a court of equity although the grantor subsequently executed a quit claim deed to the grantee, thus precluding entry for the breach of the covenant.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Bill by Isadore Weil against Eugene L. Hill to enjoin the removal of a house nearer the street. From a decree dismissing the bill for want of equity, complainant appeals. Reversed and remanded.

WEIL, STAKELY & VARDAMAN, and STEINER, CRUM & WEIL, for appellant.

HILL, HILL, WHITING & STERN, and R. T. RIVES, for appellee.

SAYRE, J.—Appellee, Hill, owns the lot, 50 by 165 feet, on the southwest corner of Perry street and Jeff Davis avenue, in the city of Montgomery. On the lot is a residence, which stands 47½ feet from the line of Perry street, on which the property fronts. Appellee was preparing to move his house nearer to the Perry street line, when appellant, Weil, who owns and occu-

pies the lot next south of appellant's lot, filed this bill
to enjoin the operation.

There are two branches to appellee's title. On May
1, 1909, he took a warranty deed from Mrs. Winn, in
which the property conveyed is described as fronting
50 feet on Perry and running back 165 feet on Jeff Da-
vis. Ten days later he took from Sloane Young and
his wife, Cora, a deed of all their right, title and inter-
est, "both in expectancy and in reversion," in and to the
rear 35 feet of the same lot, which part Young had pur-
chased from one Rugely, and to which, for conven-
ience, we will refer as the Rugely lot. Prior to Septem-
ber 25, 1901, in pursuance of an understanding between
Young and Josie W. Hubbard, who afterwards became
Mrs. Winn, and in anticipation of the deed to be pres-
ently mentioned, the latter had moved her house on
the lot she then owned back on a line with the house
now occupied by appellant on the adjacent lot, and then
on the last-mentioned date Young, his wife joining in
the deed, on the recited consideration of $1 and "the
covenants and agreements" contained in the deed, con-
veyed the Rugely lot to Josie W. Hubbard by a deed
containing, after a description of the property and cus-
tomary words of conveyance, the following clause or
stipulation: "But it is covenanted and agreed by the
said Josie W. Hubbard, her heirs and assigns, legal
representation, and assignees, and it is made a cove-
nant running with said land, that no house or other
structure shall ever be erected on the lot immediately
east of the lot hereby conveyed on the southwest corner
of Perry street and Jeff Davis avenue, nearer or closer
to the said Perry street than the house now standing
on the said lot, the front of which is, to wit, forty-
seven and one-half feet west of the west line of said

Perry street, and a violation of this covenant shall immediately work a reversion to the grantors, herein, their heirs and assigns, of the lands hereby conveyed: Provided, however, that should the residence, as now occupied by us, be rebuilt, moved, or in other respects be changed or altered, so as to place same or other permanent improvements of said lot nearer to said Perry street than now located, then this obligation shall be by such change in location of said house or buildings on said lot so modified as to require only that the house and other improvements on the lot of said Josie W. Hubbard shall maintain, with such changes or improvements as may be made upon the premises owned by us, the same relative position to the said Perry street as is now established."

This deed was recorded in July, 1906, thus putting appellee upon notice of it, and upon the quoted clause appellant bases his claim of right to the injunction sought. His theory is that the clause should be held effectual in equity by way of estoppel or implied covenant to impose upon the lot previously owned by Josie W. Hubbard the burden of a perpetual building restriction, a negative easement or servitude, appurtenant to Mrs. Young's adjacent lot, now owned by him, and binding upon any purchaser of the Hubbard lot having notice—this, though the instrument of conveyance containing the clause was not subscribed by the grantee and would fix a servitude on property not the subject of conveyance for the benefit of the property of a grantor whose interest in the property conveyed was nothing more than inchoate right of dower.

The title by which appellant claims to have acceded to the right in question has two branches also. Cora Young and husband mortgaged the lot to the Travelers'

Insurance Company on June 27, 1899. It will be observed that this was before the execution of the deed containing the clause. This mortgage was foreclosed on April 5, 1906, and appellant became the purchaser and received a deed from the person executing the power. This title is stated in the bill, but we do not consider that it affects the question under consideration. In the meantime—that is, on December 28, 1901—Cora and Sloane Young had conveyed the lot to J. H. Clisby, "together with all improvements and appurtenances thereunto belonging." In 1908 Clisby conveyed the lot to Weil, describing it by metes and bounds, and to this description adding words and figures which, with slight changes to avoid confusion, may be quoted as follows: "Being the same property described in the mortgage of Cora Young and Sloane Young, her husband, to the Travelers' Insurance Company, date June 27, 1899, recorded in Mortgage Book 160, page 272, in the office of the judge of probate of Montgomery county, Ala., except one piece thereof herebefore released therefrom as described in Deed Book 45, page 307, with an alleyway ten feet wide running into said property from the south side of Jeff Davis avenue."

There was no other mention of appurtenances.

It was held in the court below on these facts that appellant's case was devoid of equity, and from the decree dismising his bill this appeal has been taken.

(1-3) In determining the intention expressed by the deed of September 25, 1901, we must look to the terms of the deed itself, and then, if there be any doubt, to the relation between the properties and the circumstances of the parties at the time so far as disclosed by the bill, to the end that good sense and sound equity may be applied in the case. Appellant assumed, of

course, the burden of stating facts that would show the intent to create a right in the nature of an easement over the land of the grantee, that the intent had been so expressed as to become binding on land, and his accession to the right; but, the right appearing, the court will not presume that it was intended to be in gross, or personal to the grantor, if it can fairly be construed as appurtenant to his land; and one test, approved by experience and common sense, is that the restriction would naturally operate to enhance the value of the grantor's adjacent property, whether retained by them or conveyed to another. "If this be so, it is a strong circumstance to indicate that the restriction was not intended for the mere personal benefit of the grantor, but as a permanent servitude beneficial to the owner of the land, whoever he may be, and appendant to the premises."—*McMahon v. Williams,* 79 Ala. 89. And, besides, in this case, from the language of the clause itself, considered apart from the stipulation for a "reversion," it is apparent that the parties intended that the advantage contracted for should be permanent and appurtenant to the grantor's adjacent land— this, for one reason, among others, that the covenant was made, "a covenant running with said land." Appellee would refer these words to the land granted and deny their application to the adjacent lot previously owned by the grantee. But on looking to the substance of things it is seen that appellee's application would render the words insensible. If an easement was created running with any land, it runs with the land upon which it is fastened as a burden. It would be quite anomalous to destroy the entire beneficial meaning of the covenant on the sole consideration that the parties made an inapt use of the single word of refer-

ence, "said." Nor, on the other hand, was the ease-
ment made personal by reason of the fact that it was
not expressly limited to the "heirs" of the grantors,
since it appeared otherwise from the deed that the
right to enjoy the easement was not limited to the life-
time of the grantors therein—this, in view of the stat-
ute which provides that words of inheritance are not
necessary to the creation of a fee.—Code, § 3396; Jones
on Easements, § 45.

(4) There can be no doubt, aside from what effect
may be given to the provision for a reversion, that Josie
Hubbard, by her acceptance of the deed to the Rugely
lot, containing the clause in question, agreed for her-
self, her heirs, legal representatives, and assigns, that
no house or other structure should ever be erected on
the lot she previously owned nearer to Perry street
than the house then standing on the lot. There was a
modification in favor of the grantee, to become operative
in certain conditions; but that is of no consequence in
this case. Appellee insists that the covenant of this clause
was not binding upon the grantee, nor upon appellee
because the deed was not subscribed by the grantee.
But the doctrine is well settled in this state that an in-
terest in lands, which the court of chancery will pro-
tect, may be acquired by estoppel notwithstanding the
statute of frauds.—*A. G. S. R.R. Co. v. S. & N. Ala R. R.
Co.*, 84 Ala. 570, 3 South. 286, 5 Am. St. Rep. 401; *Frank-
lin v. Pollard Mill Co.*, 88 Ala. 318, 6 South. 685. And
the doctrine of the courts generally concerning cove-
nants of this character and in respect of the right of
parties in the position of appellant to the benefit
of them, is clearly expressed in *Coudert v. Sayre*, 46
N. J. Eq. 386, 19 Atl. 190, as follows: "When it appears
by the true construction of the terms of a grant that

it was the well-understood purpose of the parties to create or reserve a right, in the nature of a servitude or easement in the property granted, for the benefit of other land owned by the grantor, no matter in what form such purpose may be expressed, whether it be in form a condition, or covenant, or reservation, or exception, such right, if not against· public policy, will be held to be appurtenant to the land of the grantor, and binding on that conveyed to the grantor, and the right and burden thus created and imposed will pass with the lands to all subsequent grantees. And any grantee of the land to which such right is appurtenant acquires, by his grant, a right to have the servitude or easement, or right of amenity, as it is sometimes called, protected in equity, notwithstanding that his right may not rest on a covenant which, as a matter of law, runs with the title to his land, and notwithstanding that it may also be true that he may not be able to maintain an action at law for the vindication of his right. The cases in which this doctrine has been recognized and enforced are quite numerous, but only a few will be cited.—*Brewer v. Marshall,* 19 N. J., Eq. 537 (97 Am. Dec. 696) ; *Kirkpatrick v. Peshine,* 24 N. J. Eq. 206; *Gawtry v. Leland,* 31 N. J. Eq. 385; *Whitney v. Union Railway Co.,* 11 Gray (Mass.) 359 (71 Am. Dec. 7151 ; *Parker v. Nightingale,* 6 Allen (Mass.) 341 (83 Am. Dec. 631; *Schwoerer v. Boylston Market Association,* 99 Moss. 285; *Hills v. Miller,* 3 Paige (N. Y.) 254 (24 Am. Dec. 218) ; *Coles v. Sims,* 5 De G., M. & G. 1; *Western v. MacDermott,* L. R. 1. Eq. Cas. 499. s. c. appeal L. R. 2 Ch. App. 72."

As to the covenant "running with the land," see, also *Gilmer v. M. & M. Ry. Co.,* 79 Ala. 569. 58 Am. Rep. 623.

(5)   But appellee insists that the clause as a whole amounted to nothing more than a condition upon the grantee's title in the Rugely lot, and that the condition has been extinguished by the unity of the condition and the fee which has been effected by the quitclaim deed of the Youngs to him.   Unmistakably the clause does connect the covenant with the condition, and makes it manifest that the condition was inserted to secure the advantage expressed in the covenant.   Nor is it to be escaped that the stipulation was so framed that a violation of the covenant would operate immediately, and therefore without the necessity for an entry, to determine the estate granted.   The clear legal effect was to create a conditional limitation upon the fee granted, leaving in the grantors a possibility of reverter conditioned upon an unobstructed flow of light and air and view across the front of the adjacent Hubbard lot. But the covenant and the conditon, though thus connected, affected different estates.   The condition affected the title to the Rugely lot and inured to the benefit of the grantors, their heirs and assigns.   The covenant imposed upon the front 47½ feet of the Hubbard lot a servitude for the benefit of, and annexed to, the grantor's adjacent lot.   This servitude was the real consideration for the grant. The condition, imposed for security, was an incorporeal hereditament in the grantors, the legal title to which would pass only by express grant.   But the easement, as we have seen, passed by a grant of the land to which it was appurtenant. There is no reason, therefore, why the extinguishment by the Youngs of the condition upon one title should effect the servitude appurtenant to the other which had previously passed by their deed to Clisby.   An existing easement appurtenant to land passes by the deed of

the owner of the land to his grantee and follows the land without any mention whatever.—Jones on Easements, §§ 22, 23, and authorities cited. In this connection appellee relies upon those words of description in which the deed from Clisby to appellant refers to the property conveyed as being the property described in the mortgage of Cora and Sloane Young to the Travelers' Insurance Company, etc., as sufficient to convey the easement then existing and appurtenant to the property. We think, rather, that the natural and proper construction of the secondary and supplemental description is that it was not intended to limit the nature of the fee conveyed, but only to identify the property, not its mere incidents, as property to which appellant had previously acquired a different title under foreclosure, and to limit the territorial extent of the grant. It would seem more in consonance with a common rule of interpretation to hold that, when the grantor in that instrument entered upon the business of limiting the antecedent terms of a general grant by the process of exclusion, he would have expressed every limitation or exception he then had in mind.

It is next insisted that a covenant purporting to reserve an easement in favor of one other than the grantor is void. It is true that an easement cannot in strict law be made the subject of a reservation or exception, for it does not issue out of land as a profit, nor is it parcel of the land. But it is to be observed, in line with what we have previously said and the authorities cited above, that in equity at least the effort is to construe and enforce contracts according to the true intention of the parties so long as they violate no principle of public policy, and such a reservation or exception is construed precisely as if it were a counter grant

[Weil v. Hill.]

by the grantee, and thus, in a case like this, effect is given to the plain terms of the contract.—*Good v. G. W. Deep Coal Co.*, 2 De G., J. & S. 600; *Dyer v. Sanford*, 9 Metc. (Mass.) 395, 43 Am. Dec. 399. In this bill there is no attempt to enforce an easement created by reservation or exception. The effort is to enforce a notional counter grant, or a covenant implied by the grantee's acceptance of the benefits of the deed to him, and the court of chancery will compel performance, whether the servitude bargained for is imposed upon the land granted or other land of the grantee so situated with respect to land of the grantor as that the former may naturally and reasonably be made servient to the latter. Mrs. Young joined in the conveyance, and though her interest in the tract conveyed was only an inchoate right of dower, her release constituted a valuable consideration for her execution of the deed.—*Gordon v. Tweedy*, 71 Ala. 202.

These considerations lead us to conclude that the decree denying appellant's right to the easement in question, and dismissing his bill for want of equity, was error.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.