# Leek, *et al. v.* Meeks, *et al.*

## Bill to Enjoin Joinder of Wall.

(Decided June 30, 1916.   Rehearing denied January 18, 1917.
74 South. 31.)

1. **Evidence; Documentary; Transcript of Record.**—In a suit to enjoin the use of a party wall an instrument properly certified as the transcript from a record of an agreement between the predecessors in title of the parties containing a covenant for the payment by the then owner of respondent's lot of a portion of the costs of a party wall at such time as he should exercise the right granted to use it, purporting to be signed by the predecessor in title of the respondent attested in writing by a witness was properly admitted in evidence under section 3382, Code 1907.

2. **Party Walls; Covenant; Running with Land.**—A covenant in writing by the owner of lands on behalf of himself and his heirs and assigns to pay to the owner of the adjoining lot or his heirs and assigns, a portion of the cost of a party wall, at such time as he should exercise the right granted to him by the same instrument to build to and use said wall, was a covenant not only binding on the original parties, but also on purchasers with notice, and created an equitable easement in land of the grantee of such right.

3. **Same; Construction.**—In determining the question whether a covenant as to the use of a party wall and payment therefor is enforceable against subsequent owners of the property, the language of the instrument and all attending facts and circumstances surrounding the parties at the time of its execution are to be considered.

4. **Covenant; Construction; Rule.**—If a restriction imposed by a grantor or proprietor upon granted premises would naturally operate to enhance the

[Leek, et al. v. Meeks, et al.]

value of his adjacent premises whether retained by him or another, it is a strong circumstance that the restriction was not for the mere use of the grantor, but a permanent servitude appendant to the premises.

**5. Party Walls; Covenants; Notice.**—The purchasers of land were charged with constructive notice by the recordation of an agreement by which their predecessors in title covenanted to pay a portion of the costs of a party wall upon exercising the right granted in the agreement to use the wall; also by the recital of such agreement in each deed in their chain of title and also with notice that this lien is not barred under twenty years.

**6. Same; Covenants.**—Where respondent's building was torn down and disconnected with the party wall, in rebuilding and using the wall with actual notice of a covenant on the part of their predecessors in title to pay a portion of the costs of the wall when it was used, created a new right of action on behalf of complainant under the original promise, although the statute of limitation might have perfected a bar before respondent's building was originally attached to complainant's wall.

APPEAL from Gadsden City Court.

Heard before Hon. J. H. DISQUE.

Bill by J. L. Meeks and another against J. T. Leek and another to restrain and enjoin respondents from building to or attaching to the western wall of a certain building, and to restrain the use of the wall. Decree for complainants and respondents appeal. Affirmed.

The chancellor's opinion, directed to be reported, is as follows:

The facts and evidence in this case may be briefly stated as follows:

J. R. Nowlin in the year 1892, and from whom, by mesne conveyances, complainants derive their title, was the owner of the west half of lot No. 70 in fee simple, and that B. M. and J. L. Pogue were the owners in fee simple of the east half of lot No. 70, said lots being located on Broad street in the city of Gadsden, in the business section of said city. The respondents derive their title by mesne conveyances from the Pogues. The Pogues erected a one-story building on their lot, and later J. R. Nowlin built a two-story brick building on his lot, using the western wall of the one-story Pogue building as the eastern wall of his two-story brick building as a party wall, using the Pogue wall in height and depth, two stories, making said western wall, which was located on the Pogue lot, a two-story wall in height and depth. At the time of the extension of the Nowlin two-story wall and its erection, on August 22, 1892, there was recorded in the office of the judge of probate of Etowah county an agreement between

the Pogues and Nowlin, the then owners of lot No. 70, which had a frontage of 100 feet, reciting substantially the facts set out in this opinion, and in addition thereto the following: Now, therefore, in consideration of the premises above and below recited, and the further consideration of $1 to them paid Mrs. B. M. Pogue and J. L. Pogue, do hereby agree and covenant with said Nowlin, his heirs and assigns, that the said Nowlin, his heirs and assigns, shall have the right to use said wall to the extent of the western half thereof, its entire width and height as it now stands in connection with the said building, and so long as said building stands, with full right to preserve and repair the same, having cost the sum of $824.35, of which amount Mrs. B. M. Pogue has paid $190 and said Nowlin has paid the balance. It is agreed that upon the payment to said Nowlin, his heirs and assigns, by said Mrs. B. M. Pogue, her heirs and assigns, of the sum of $224.47, without interest, she or they shall have the right to build to and use said wall, as extended by said Nowlin in height and depth; and we hereby agree and covenant with said Nowlin that in the event of its alienation by us before said use, we will stipulate in the conveyance we will make for a like covenant on the part of our alienee in favor of said Nowlin.

Subsequent to the execution of the foregoing instrument Beaty became the purchaser of the Pogue lot, and on May 5, 1899, he sold said lot to Hagin & Proctor, and in the deed from Beaty to Hagin & Proctor, in the warranty clause in said deed appears the following exception: "Except as to any liability on the contract entered into by J. L. and B. M. Pogue on the one part, and J. R. Nowlin on the other part, in regard to the wall on the west side of said lot." Proctor purchased Hagin's interest in the lot, and in the latter part of 1902 or early in 1903, made his single story brick building into a two-story brick building, using the second story of the Nowlin wall as the second story of his building, and attaching same, and thus making his building a two-story building, using said Nowlin wall as a wall for his building, and used said Nowlin wall, without the consent of Nowlin or the then owner of the said Nowlin lot. Proctor thereafter sold and conveyed to Mrs. Nancy C. Leek, testator of respondent. At the time Proctor used the Nowlin wall for a two-story building on his lot, Mrs. Abercrombie had become the owner of the Nowlin wall and lot, and was then in possession thereof, and in the year 1910 or 1911, complainants here became the purchasers of the

Nowlin lot through mesne conveyance. In the year 1915, and just before the filing of this bill, respondent Leek tore down the front of the building on the Pogue lot which he had purchased, and which was attached to the Nowlin wall, for the reason that said wall had become dangerous and had been condemned by the city authorities, as being unsafe, and in addition was pulling out the wall of complainant's building. Respondents, in building a new front to their building, joined and attached a new front to complainant's wall. At the time of the filing of the injunction, the entire front of respondent's building was torn out, and in rebuilding and replacing the front to the building they used new iron and new holds in complainant's wall, and had to join complainant's wall in making said repairs. That the steel beams used in the front part of the building and in repairing it were set on projections in the Nowlin wall, and in repairing and rebuilding the front of respondent's building, they attached the materials to complainant's wall.

(1) It is argued by counsel for respondent that the instrument in writing, the basis of this suit, executed by J. L. and B. M. Pogue, parts of which are above set out, has not been proven as to execution, and is incompetent evidence. This contention is not sound in view of section 3382, Code 1907. The instrument offered in evidence is properly certified as the transcript from a record, and purports to be signed by J. L. Pogue and his wife, B. M. Pogue, and is attested in writing by a witness, who wrote his name as a witness to the signature of the parties executing the instrument. Section 3355, Code 1907, provides that when a party cannot write, his signature must be attested by two witnesses who can write; when, however, the party can and does write his signature, his signature must be attested by one witness. The parties to the instrument, and the attesting witnesses, all wrote their names thereto, and therefore the paper was properly admitted in evidence.—*O'Neal v. Tenn. C., I. & R. R. Co.*, 140 Ala. 387, 37 South. 275, 1 Ann. Cas. 319.

(2) One of the main propositions submitted for decision involves the construction of the language of the contract which is above set out. The instrument on its face shows in unmistakable language that the Pogues not only covenanted for themselves, but for their heirs and assigns, to pay $224.47, when they or their heirs or assigns used the wall built by Nowlin. There is no subject that is as difficult as that of determining when a covenant

is personal and when not, or when it runs with the land, and it requires much technical learning in the law in the solution of this proposition.  In the first place, the Pogues agreed in writing to subject their lot to the servitude of the second story brick wall of Nowlin, coupled with the condition that before they or their assigns could use the wall they agreed to pay the sum of money set forth in the contract, and thus attaching an equity to her property.  This they had the right to do, and to subject her lot to this servitude, and transmit this servitude to others.  They not only covenanted for themselves, but for their heirs and assigns, and also for the heirs and assigns of Nowlin.  Under the contract there was privity of estate created between the parties, the covenants were not merely neutral, but embraced their heirs and assigns, thus creating a privity of estate binding both upon the original parties to the covenant, and also on subpurchasers with notice.  If an equity is attached to the property of an owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased.—*Webb v. Robbins*, 77 Ala. 176; *McMahon v. Williams*, 79 Ala. 290.

In the case of *Cole v. Hughes*, 54 N. Y. 444, 13 Am. Rep. 611, Justice Earl says:    There is a wide difference between the transfer of the burden of a covenant running with the land, and the benefits of the covenant, or, in other words, of the liability to fulfill the covenant, and the right to exact its fulfillment.  The benefit will pass with the land to which it is incident, but the burden or liability will be confined to the original covenantor, unless the relation or privity of the estate or tenure exists, or is created between the covenator and covenantee.

Again, in the case of *Trustees v. Lynch*, 70 N. Y. 440, 26 Am. Rep. 615, Justice ALLEN, speaking for the court, says:    The language of the court and the judges have been very uniform and very decided upon this subject, and all agree that whoever purchases the land upon which the owner has imposed an easement of any kind, or created a charge which could be enforced in equity against him, takes the title subject to all easements, equities, and charges, however created of which he has notice.  This language is quoted approvingly by Judge SOMERVILLE in *McMahon v. Williams, supra.*  This same principle is announced in *Webb v. Robbins, supra,* with the further holding that the covenant runs with the land into whose hands soever it may fall, and this does not require the insolvency of defendant to uphold it.

In *Gilmer v. M. & M. R. R. Co.*, 79 Ala. 569, 58 Am. Rep. 623, Judge SOMERVILLE cites *Van Rensselaer v. Read*, 26 N. Y. 574, and quotes Judge SELDEN as saying: It has often been held that covenants both in their benefits and burdens run with the land where no tenure in its strictest sense exists between the parties. However, he left the question undecided.

"If the owner of land enters into a covenant concerning land, concerning its use, subjecting it to easements or personal servitude and the like, and the land aforesaid is conveyed or sold to one who has notice of the covenant, the grantee or purchaser will take the premises bound by the covenant, and will be compelled in equity, either to specifically execute it, or will be restrained from violating it, and it makes no difference whatever with respect to this liability whether the covenant is or is not one within the law running with the land."—Section 689, 2 Pom. (3d Ed.).

In the case of *Sharp v. Cheatham*, 88 Mo. 498, 57 Am. Rep. 433, we have the case in hand, save and except that the written instrument construed in that case is not as full in its conditions as the written instrument involved in this case. The instrument in the *Sharp Case* did not have the word "assigns," nor the word "covenant" in it, while the instrument before us has. There is a very exhaustive opinion in that case, and a great many authorities are cited. The court finally concluded that the contract before it created an equitable easement in the land, and that a purchaser with notice would take it subject to the agreement. There is a very learned discussion of this subject in the case of *Trustees v. Lynch, supra*, 70 N. Y. 440, 26 Am. Rep. 615.

(3, 4) In solving the proposition as to whether the agreement is a personal one, and only enforceable against the original parties, or against the party who first infringed the rights of complainant, the language of the instrument and all attending facts and circumstances surrounding the parties at the time of its execution are to be considered. In *McMahon v. Williams, supra*, the court says that one of the most practical tests supported by common sense and common business experience is whether the restriction imposed on a grantor or proprietor upon the granted premises would naturally operate to enhance the value of his adjacent premises, whether retained by him or by another. If this be so, it is a strong circumstance that the restriction was not for the mere use of the grantor, but as a permanent servitude, beneficial to the owner of the land, whoever

he may be, and appendant to the premises.  In applying this rule of law to the instant case, we find that the Pogues had erected a one-story brick building on their lot, and it is apparent to any reasonable sensible business man that the erection of a two-story brick building placing a two-story wall on top of the single story wall of the Pogues, and thereby enabling future purchasers of the Pogue lot to erect a two-story building on said lot having the western wall completed, that it would take less money to change a one-story building into a two-story building by reason of having this wall already built, and that it would materially enhance the value of the property, and operate as an inducement to purchasers to buy.

(5, 6) In 79 Ala. 291, Judge SOMERVILLE further says that a rule of controlling importance, especially in doubtful cases, is that such easement is never presumed to be personal or gross when it can fairly be construed to be appurtenant to some other estate.  The evidence is without conflict that Pogue, the covenantor, and his assigns down to respondents in this case, had notice of the agreement between the Pogues and the Nowlins, and the equities growing out of it, and took their title to the lot, subject to it, and impliedly agreed to comply with it.  It is just and equitable to require respondent to do that which the Pogues covenanted to do.  It would be inequitable to allow these respondents to disregard the covenant entered into by the Pogues of which they had notice when they became purchasers of the lot.—Authorities supra, and *Jebeles & Colias Confec. Co. v. Brown,* 147 Ala. 593, 41 South. 626, 11 Ann. Cas. 525; *Weil v. Hill,* 193 Ala. 407, 69 South. 439.  The evidence showed a chain of conveyances as above set out, and the law not only charged them with constructive notice of the recordation of the agreement, but in respondent's very chain of title they were informed as to the agreement.  These facts were sufficient to put them on notice, which, if they had followed up, they would have ascertained that the agreement had not been complied with.  The law charges them with notice of the equities which complainants had in this wall, and that this special equity created an equitable lien on the property, upon which the wall is erected, and that this lien is not barred under 20 years; and it follows that no presumption of payment can be indulged until the lapse of 20 years.—*Ware v. Curry,* 67 Ala. 274; *Tayloe v. Duggar,* 66 Ala. 446.  The evidence is without conflict that the whole of the front of the brick

[Leek, et al. v. Meeks, et al.]

building on respondent's lot, which was attached to complainant's wall, was torn down and disconnected from said wall, and in rebuilding their wall they again attached the front of the building to complainant's wall, with actual notice of the original agreement, and a demand for the payment of the amount specified in this agreement, which demand respondents failed to comply with. In view of the evidence a new right of action was created in behalf of complainant under the original promise to pay when the wall was used, although the statute of limitation might have perfected a bar before the front of respondent's building was originally attached to complainant's wall. When the land is charged at any time, the charge ought to be equal, and one should not bear all the burden, and the law on this point is founded in great equity, and falls within the reason and equity of the doctrine of distribution, which is fixed and bottomed on general principles of justice.—*Sharp v. Cheatham, supra.* This principle is not in conflict with that announced in the case of *Bisquay v. Jeunelot*, 10 Ala. 245, 44 Am. Dec. 483, for it is clearly intimated by the court that if there had been a written contract to pay for the wall when used, the conclusion of the court would be in line with the principles above announced.—*Preiss v. Parker*, 67 Ala. 500. A proper application of these principles leads to the conclusion that by virtue of the written agreement entered into by J. L. and B. M. Pogue and J. R. Nowlin, and their assigns, to pay the sum of $224.47 whenever the Nowlin wall was used, created a special equity in the premises of respondent, and incumbered them with this equity, and respondents having notice both actual and constructive, they are as fully bound by the written agreement as if they had signed it. This equity carries with it an equitable lien on the premises equal to the amount agreed to be paid by the original covenantors in the written instrument, but without interest. Decree was entered accordingly.

CULLI & MARTIN for appellants. INZER & INZER for appellee.

THOMAS, J.—We have carefully considered the several assignments of error, and, without indulging any presumption in favor of the correctness of the decree of the chancellor, are of the opinion that the correct conclusion was reached. The opinion of the chancellor, made a part of his final decree in the cause, has carefully stated the principles involved; and no good end would be subserved by a further discussion of the same. The

reporter is directed to set out this well-considered opinion of the chancellor, as authority for the conclusion reached in this court. There being no error in the record, the decree is affirmed. Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.