(79 South. 574)
### CITY OF BIRMINGHAM v. GRAHAM.
(6 Div. 718.)

(Supreme Court of Alabama. June 27, 1918.)

1. DEDICATION &⇒55 — RESERVATIONS — NOTICE.

A recorded deed, granting to a land company a strip to be used as a street, with the reservation that the street could not be opened until the value of buildings thereon was paid for, was notice of said conditions to purchasers of lots from the grantee, under Code 1907, § 3373 et seq.

2. DEDICATION &⇒1—DEFINITION.

A dedication or public easement in land is generally defined as its devotion to a public use, by an unequivocal act of the owner of the fee, manifesting the intention that it shall be accepted to be used presently or in futuro.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dedication.]

3. DEDICATION &⇒33—ACCEPTANCE.

Acceptance of dedication of a street must be by competent authority, and may be evidenced in several ways: By deed or other record; by acts that operate as an estoppel in pais; or by a common continued use on the part of the public in such wise that a dedication and acceptance is presumed.

---

&⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. DEDICATION ⊚══36—CONDITIONS AND LIMITATIONS.**

Conditions and limitations may be annexed to dedications, and the acceptance of a dedication is subject thereto, unless they are subsequently expressly waived by the dedicator or his privies, but the conditions cannot be such as give the owner an immunity from public burdens.

**5. DEDICATION ⊚══55—RESERVATION.**

Reservations in dedication may be either of a right personal to the grantor or of a right appurtenant to his lands for the benefit of which it is reserved; the former being unassignable, but the latter passing with the land.

**6. DEDICATION ⊚══55—RESERVATIONS.**

A reservation in a deed, conveying to a land company a strip giving grantor the right to use and occupy dwelling occupied by him, situated "in 31st street" in the plans of the land company, until the land company may desire to open such street for public use, and the land company should have such right upon payment of the value of the dwelling and outhouses which may be situated in said street at said date, was personal to the grantor as far as erection of additional buildings were concerned, but was appurtenant to the land as to buildings then on the land.

**7. DEDICATION ⊚══55—RESERVATIONS.**

A reservation in a deed of land to a land company to be used as a street, to the effect that grantee could not open the street until the value of buildings thereon should be paid, was not contrary to the law of dedication, and a city could not have the buildings removed as an obstruction until such buildings were paid for.

**8. DEDICATION ⊚══19(5)—PLATS.**

Where a land company sold lots with reference to a plat showing a certain street and made a partial exercise of an option to buy part of the street, then belonging to another, there was a dedication of the street to the public to the extent of the land company's right, title, and interest.

**9. DEDICATION ⊚══39—ESTOPPEL.**

Where owner conveyed a strip to a land company to be used as a street at any time that the land company desired to open it and pay for the buildings situated thereon, subsequent conveyances by grantor of adjacent lots, wherein reference was made to a plat of the land company, showing such strip as a street, and payment of taxes and municipal assessments on the strip by the grantee, did not operate as an estoppel in pais against the owner's right to compensation for the buildings.

**10. DEDICATION ⊚══55—CONDITIONS.**

Where owner conveyed strip for street, not to be opened until buildings thereon were paid for, an assignee of the owner's rights was entitled to remove additional buildings put on the land after the assignment, upon the opening of the street and payment for the buildings erected by the assignor.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by the City of Birmingham against Mrs. Ella M. Graham to abate a nuisance. From a decree dismissing the bill, the municipality appeals. Affirmed.

M. M. Ullman and W. A. Jenkins, both of Birmingham, for appellant. Henry Upson Sims, of Birmingham, for appellee.

THOMAS, J. The bill was filed by the municipality to abate as a nuisance certain buildings alleged to be maintained on a given street by the respondent.

It is necessary that the several conveyances by B. P. Worthington to Josiah Morris as trustee, and to Elyton Land Company, of the lands embraced in Thirty-First street, at the point of obstruction, be considered in the light of the subsequent conduct of the parties in order to determine whether an unconditional or unincumbered dedication thereof to the public was intended and accepted.

The tract of land on which the dwelling of Mr. Worthington then stood was not granted to the Elyton Land Company by the deed of September 8, 1870. Of the exception contained therein, complainant's bill alleges:

"The lands which were excepted and not conveyed, consisted of two acres * * * upon which was located the dwelling house in which the said B. P. Worthington and his wife, Caroline Worthington, then resided, and it was provided in said deed that the said two acres of land is reserved by the parties of the first part, subject to the following conditions and terms: 'That if the said party of the second part or the company or association of persons which it is proposed to organize and incorporate under the corporate name and style of the Elyton Land Company, shall at any time within two years from this date desire to purchase the said two acres of land, the said party of the second part, or the said land company by its corporate name, shall have the right to purchase the same, and the said parties of the first part shall be bound to sell and convey to said purchasers the said two acres of land and all improvements thereon, upon being paid by the said party of the second part, or the said land company, *twenty-five dollars in cash for each of said two acres, and also paying in cash the assessed value of all improvements thereon at the time of said purchase*, such value to be ascertained by referees under the laws of Alabama, two of whom shall be chosen by said parties of the first part, and two by said party of the second part, or said land company, they having the right in case of disagreement to choose an umpire and their assessment of value of said improvements to be final.'" (Italics supplied.)

Whether this was a reservation or exception is immaterial. Webb v. Jones, 163 Ala. 637, 641, 50 South. 887; Weil v. Hill, 193 Ala. 407, 69 South. 438.

Before the expiration of this option, on July 22, 1872, Mr. Worthington and wife conveyed to Elyton Land Company said two acres on which their dwelling was located, on condition that:

"The said B. P. Worthington shall have the right to use and occupy the dwelling and outhouses now occupied by him situated in Thirty-First street, in the plan of the property of the Elyton Land Company between Sixth and Seventh Avenues South, until such time as the said Elyton Land Company may desire to open for public use said Thirty-First street between Sixth and Seventh Avenues South, and the said Elyton Land Company shall have the right to open said street last aforesaid at any time they may think proper—upon payment to the said B. P. Worthington in cash the aforesaid value of said dwelling and outhouses which may be situated in said street at the date of the assessment, which assessment must be made, if the parties hereto cannot agree upon the value, by referees under the arbitration laws of the

⊚══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

state of Alabama, two of whom shall be chosen by the said Elyton Land Company and two by the said B. P. Worthington, they having the right in case of disagreement to choose an umpire and their assessment of value shall be final."

[1] This conveyance with conditions, duly filed for record in the office of the judge of probate of the county where the lands were situated was notice of said conditions to all successors in title. Veitch v. Woodward Iron Co., 200 Ala. 358, 76 South. 124; Code 1907, § 3373 et seq.

Was the effect of this covenant personal or collateral as to Worthington, extending to him alone during life, or was it a covenant, running with the land, of the conditions on which Thirty-First street between Sixth and Seventh Avenues South was purchased and to be opened to the public after payment of the purchase price?

[2] A dedication or public easement in land is generally defined as its devotion to a public use, by an unequivocal act of the owner of the fee, manifesting the intention that it shall be accepted and used presently or in futuro. In fact, most dedications have been where there was no present need of the land for the purpose to which it was set apart. On this subject the New Jersey court has observed:

"If dedication requires no deed, no grantee to take; if it be an act in pais, not required to be even in writing, manifested or accompanied by an intention to devote to public use—why may not the owner dedicate land now, with the distinct understanding that it will not be wanted for public use in 50 years? If immediate user by the public, or even immediate acceptance by a competent public authority, be, in all cases, necessary to give effect to a dedication of land to public uses, the doctrine of dedication is shorn of one of its most important uses." Mayor of Jersey City v. Morris Canal & Banking Co., 1 Beasley (12 N. J. Eq.) 547, 563; Den v. Dummer, 20 N. J. Law, 86, 106, 40 Am. Dec. 213; Trustees of M. E. Church of Hoboken v. Mayor of Hoboken, 33 N. J. Law, 13, 22, 97 Am. Dec. 696; Town of Derby, etc., v. Alling, 40 Conn. 410; City of Denver v. Clements, 3 Colo. 472.

[3] Of the acceptance of a dedication, we may observe, that it must be by competent authority; that it may be evidenced in several ways: (1) By deed or other record; (2) by acts that operate as an estoppel in pais; or (3) by long-continued use on the part of the public in such wise that a dedication and acceptance is presumed. City of Mobile v. Chapman, 79 South. 566;[1] City of Baltimore v. Broumel, 86 Md. 153, 37 Atl. 648; New Windsor v. Stocksdale, 95 Md. 196, 52 Atl. 596.

[4] Conditions and limitations may be annexed to dedications; and the acceptance of a dedication is subjection thereto, unless they are subsequently expressly waived by the dedicator or his privies in estate.

Mr. Elliott (Roads & Streets, vol. 1, § 163) collects authorities to the effect that an owner may grant whatever estate he sees fit, and "may annex conditions and limitations to his grant at pleasure, provided such limitations

and conditions are not inconsistent with the dedication and will not defeat the operation of the grant. A condition or limitation which would render the dedication ineffectual cannot be annexed; thus, a man cannot reserve possession to himself, nor reserve a right to do anything in the way which will destroy its character as a public way." McMahon v. Williams, 79 Ala. 288; Weil v. Hill, 193 Ala. 407, 69 South. 438; 2 Devlin on Deeds, §§ 968, 970c, 971, 990a, 990e; Sims on Covenants, p. 227. This limitation would apply to the Elyton Land Company's dedication to the public if it had an unincumbered title to the land. It can have no application to Mr. Worthington's vendor's lien thereon for the cost or value of said buildings.

As an authority for the right of the owner to annex to a dedication a reasonable and consistent limitation or condition, see Antones et al., Trustees, etc., v. Heirs of Eslava, 9 Port. 527. In that case the Chief Justice, who writes the opinion, observes that property may be dedicated to public or religious uses, and that the law does not prescribe an exact period beyond which the original proprietor shall not withdraw property from the use to which he has dedicated it, holding that, under the circumstances indicated in that particular case, acquiescence for only 20 years showed that the dedication was only for the use of the church during the sovereign pleasure of the King of Spain. This case is cited with approval in Doe ex dem. Kennedy's Ex'rs v. Jones, 11 Ala. 63, where it is held that where no limitations are expressed in the dedication of a street, it extends across the shore to low-water mark, as the shore may be reclaimed or filled up by accretions and become a part of the town. There are, however, conditions of another class, that have been sought to be annexed to dedications of land to public use, that are condemned; such as, those intended to be annexed to an absolute dedication to the public, seeking to secure to the dedicator, his heirs and assigns, quoad other property, "an immunity from public burdens." On grounds of public policy no one will be exempted from the discharge of burdens imposed upon others similarly situated; and authority to accept a grant with such conditions of immunity annexed, is denied. Richards v. Cincinnati, 31 Ohio St. 506, 513.

[5] If it be insisted that the clause in question, in the Worthington deed, was in part the reservation of a right, it should be noted that reservations in conveyances may be either of a right personal to the grantor, or of a right appurtenant to his lands for the benefit of which it is reserved. Such personal right is not assignable (Norcross v. James, 140 Mass. 188, 2 N. E. 946; Kettle River R. Co. v. Eastern R. Co., 41 Minn. 461, 43 N. W. 469, 6 L. R. A. 111), and does not pass to a grantor's heirs or personal representatives (Kister v.

[1] Ante, p. 194.

Reeser, 98 Pa. 1, 42 Am. Rep. 608; Cave v. Crafts, 53 Cal. 135; Tucker v. Jones, 8 Mont. 225, 19 Pac. 571). If the right is real, attached to, and appurtenant to the land for the period stipulated, it passes by conveyance or descends to the grantor's heirs or vests in personal representatives. 4 Elliott on Contracts, § 3866; 2 Elliott on Contracts, § 1448. For example, the reservation to the lessee of a right of occupancy, for a term of years, of such parts of the premises as he reduces to cultivation each year of the term, was held to run with the land, and to be binding on either a purchaser with notice or an assignee of the reversion. Callan v. McDaniel, 72 Ala. 96; McDaniel v. Callan, 75 Ala. 327; 2 Elliott on Contracts, § 1448.

The construction of the covenants in the conveyance is not without difficulty, the instrument no doubt having been drawn without the aid of skilled counsel. However, it is to be observed of covenants in a lease that concern the thing demised, yet "relate to something not in existence at the time of its execution," have been held not to "bind the lessee's assignee unless made with the lessee and his assigns." Spencer v. Clark, 5 Coke, 16; s. c. Smith's Lead. Cas. (9th Am. Ed.) 174, 227; s. c. Smith's Lead. Cas. (Hare & W. Notes) vol. 1, pt. 1, 137–228; 2 Elliott on Contracts, § 1448. Some of the general tests of covenants running with the land are that such covenant must pass to the assignee of the land itself (Leek v. Meeks, 74 South. 31;[2] Clark v. Swift, 3 Metc. [Mass.] 390; Dorsey v. Railway Co., 58 Ill. 65; Brown v. Staples, 28 Me. 497, 48 Am. Dec. 504); must affect the nature, quality, or value of the property demised independently of collateral circumstances (Merchants' Ins. Co. v. Mazange, 22 Ala. 168; McMahon v. Williams, 79 Ala. 288; Norman v. Wells, 17 Wend. [N. Y.] 136; Congleton v. Pattison, 10 East Rep. 135; Spencer v. Clark, Pasch. 25 Eliz. 16; s. c. 5 Coke's Rep. 16 [our Supreme Court Library in 3 Coke's Rep. pt. 5, 16]; Smith's Lead. Cas., vol. 1, pt. 1, pp. 137–228; Gibson v. Holden, 115 Ill. 199, 3 N. E. 282, 56 Am. Rep. 146; Parish v. Whitney, 3 Gray [Mass.] 516; Kettle River R. Co. v. Eastern Ry. Co., 41 Minn. 461, 43 N. W. 469, 6 L. R. A. 111); must affect the mode of enjoyment and there must be a privity between the contracting parties (Leek v. Meeks, supra; Webb v. Robbins, 77 Ala. 176; Gilmer v. M. & M. Ry. Co., 79 Ala. 569, 572, 58 Am. Rep. 623; Mygatt v. Coe, 152 N. Y. 457, 46 N. E. 949, 57 Am. St. Rep. 521; Norcross v. James, 140 Mass. 188, 2 N. E. 946; Wiggins v. Railway Co., 94 Ill. 83.)

[6] The conditions in Mr. Worthington's deed to the Elyton Land Company, which were covenants running with the land, secured to Mr. Worthington, his heirs, or assigns, the right to use and occupy the dwelling and outhouses designated for the time indicated, and that the land embraced in

[2] 199 Ala. 89.

Thirty-First street would be used for that public purpose when the street was opened, and secured to that land company or its assigns the right to open, as a public thoroughfare, Thirty-First street between Sixth (F) and Seventh (G) Avenues South, at any time the grantee or its assigns may think proper to open the same pursuant to the plan of said street and avenues theretofore platted by that company, on payment in cash the assessed values of the dwelling and outhouses situated therein. The covenants—if such there was—to erect other buildings on the property after the delivery of the deed from Mr. Worthington to Elyton Land Company, and, in pursuance of the occupancy of the dwelling and outhouses secured by his deed to Elyton Land Company for the time indicated, was personal to Mr. Worthington, and did not extend to his assigns. The value of such buildings as may have been erected by Mr. Worthington in the reasonable exercise of his right of occupancy, to the time he conveyed his interest in the lands to Mrs. Caroline Worthington, was secured to him and his assigns by the covenants in his conveyance to Elyton Land Company, and constituted a part of the purchase price for the lands that must be paid for per covenant conditions. Spencer v. Clark, supra.

[7, 8] Such conditional conveyance of the lands for public street was not contrary to the law of dedication, since a grantor may reasonably limit or deny certain uses of lands conveyed, and otherwise reasonably fix limitations for their use by covenants running with the land. Webb v. Robbins, supra; Gilmer v. M. & M. Ry. Co., supra. The use of the words, "Thirty-First street, between Sixth and Seventh Avenues South," in the conveyance in question, as to Mr. Worthington, his heirs and assigns, was descriptive of that part of the two acres of the homestead tract sold on conditions unequivocally stated, and was a reasonable limitation of the use to which it was to be subjected by Elyton Land Company or assigns. Under the Elyton Land Company's plat or map, showing Thirty-First street as open for the use of the public, its sale of lots with reference thereto, and its partial exercise of the option (of December 8, 1870) by the purchase on July 22, 1872, on conditions of the land from Worthington for use as a public street, as against Elyton Land Company and its assigns, constituted a dedication of all its right, title and interest therein to the public and to those who purchased respective lots with reference to that map, showing as open to the public said avenues and that street. This right was subject, however, to the payment of the balance of the purchase money necessary to secure from Worthington or assigns an unincumbered title thereto. The intention of the parties to this effect is disclosed not only by the instrument but by the situation of the parties and the surround-

ing circumstances, including that of the location of these lands with reference to others theretofore purchased. By such conditions the Elyton Land Company and its assigns, on the one hand, and B. P. Worthington and his heirs and assigns, on the other, were bound as to the consideration, the time and terms of payment, and the use to which the lands was to be subjected. The acceptance by subsequent purchasers of lots in the same subdivision, with reference to this street, or by the municipality, was on the conditions shown of record of securing to Worthington and his assigns the payment of the balance of the purchase money at the time indicated, and subject to the reasonable limitations of the ultimate use for which the land was sold. 2 Warvelle on Vendors, § 680.

The covenant as for payment for buildings thereafter to be erected on the strip of land in question, by B. P. Worthington (if such covenant there was), was personal and collateral to the land, and may not be exercised by an assign as inconsistent with a dedication thereof, defeating the operation of the grant by rendering it ineffectual. Such covenant cannot be held to be annexed to the land and binding upon the respective assigns of the contracting parties. The record discloses that the respondent, as successor in title or rights of Mr. Worthington, under the covenants of the conveyance has acted on the assumption that she was thereby given the right to erect thereon other buildings, and for which she would be paid before the street could be opened. The value of such thereafter erected buildings by Mrs. Graham may not be assessed, and payment therefor required under the covenants running with the land. Mr. Worthington's right to erect other buildings on the strip of land purchased for, and dedicated by the Elyton Land Company, as Thirty-First street being merely personal, expired with his death. Under such personal right, Worthington's ultimate assignee cannot claim justification for the obstruction of the street by these buildings erected by her. Before or when the conditions of the covenant running with the land have been complied with, Mrs. Graham will be permitted to remove the three buildings therefrom; or, in default of such compliance, she may be compelled to remove such obstructions from the street. Spencer v. Clark, supra; 2 Elliott on Contr. § 1448.

[9] The several subsequent conveyances introduced in evidence by Mr. and Mrs. Worthington, by their heirs and assigns, and by other parties in interest, of adjacent lands, wherein reference is made to the plat or map made by the Elyton Land Company and others, of the subdivision embracing and recognizing Thirty-First street as open to the public, are not sufficient to operate an estoppel in pais against respondent's right to claim the stipulated compensation—the balance of the purchase money for the buildings situated thereon at the date of Mr. Worthington's deed of May 19, 1884, to Mrs. Caroline Worthington. The right of the owner of the vendor's lien was duly reserved against his grantee and its assigns, and against an unconditional acceptance of the lands by the public until the purchase price thereof was fully discharged, by the due record of the conditional conveyance and by the continued possession of the land under this conveyance by the Worthingtons and their assigns. The payments of taxes thereon and of municipal assessments apportioned thereto, by such grantee, were not acts inconsistent with the limited use and right appurtenant thereto, reserved by the grantor to himself and assigns. A different case is presented to that of City of Mobile v. Chapman, 79 South. 566.[3] Respondent's possession and other general acts of ownership are consistent with, and will be referred to, the conditional conveyance by Mr. Worthington. And when the terms of the purchase and dedication are fully complied with, by payment in cash of the value of the buildings situated thereon at the date of Worthington's conveyance, Mrs. Graham's interest therein and right of occupancy will terminate.

[10] As to the three cottages erected by her on the land (in 1907), they are subject to removal, or, after the fulfillment, of the conditions of the original grant, may be subject to abatement as a nuisance in a proper suit.

If the bill had been filed by an assign of the Elyton Land Company in the exercise of the right of assessment, and payment of the cash value of the obstructing buildings located thereon at date of said conveyance, for the purpose of opening Thirty-First street at the designated point, in compliance with the conditions of Worthington's grant to the Elyton Land Company, or filed by the city, or by an owner of property having the right, in the exercise of such covenant running with the land, a different case would be presented for decision. The purpose of the present bill by the municipality was to abate as a nuisance the dwelling and all outhouses situate thereon, without compliance with the terms of the conveyance, which was properly denied by the chancellor.

The decree dismissing the bill is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

[3] Ante, p. 194.