# Masterson *v.* Phinizy.

### *Action on Attachment Bond, for Damages.*

1. *Who may sue on penal bond.*—An action on an attachment bond, payable to several persons jointly, and conditioned for the payment to them of "all such damages as they may sustain from the wrongful or vexatious suing out of the attachment," can only be maintained by all the obligees jointly, though the alleged damage may have accrued to only one of them.

2. *Admissibility of declarations, as part of res gestæ.*—When an attachment is sued out against a tenant's crop, on the ground that he is about removing it without paying the rent, and he afterwards sues on the bond for damages, it is permissible for him to prove, as a part of the *res gestæ*, that, by the terms of his contemplated sale, the purchaser was to pay the rent before removing the cotton.

APPEAL from the Circuit Court of Lawrence.

Tried before the Hon. W. B. WOOD.

This action was brought by John T. Phinizy, against Thos. Masterson and J. T. Masterson; was commenced on the 13th July, 1874, and was founded on an attachment bond, given by the defendants, which was in the following words: "Know all men by these presents, that we, Thomas Masterson and ———, are held and firmly bound unto John T. Phinizy, Eliza P. Phinizy, J. W. Falk, and Thomas Lile, in the sum of four thousand dollars, to be paid to the said John T. Phinizy, Eliza P. Phinizy, J. W. Falk, and Thomas Lile, their heirs, administrators, and assigns; for the payment of which, well and truly to be made, we bind ourselves, and each of us our and each of our heirs, executors, administrators, and assigns, jointly and severally, firmly by these presents. Sealed with our seals, and dated this 2d day of February, 1872. The above obligation is conditioned as follows: that whereas the above-bound Thomas Masterson, as the administrator *de bonis non* of the estate of Paul J. Watkins, deceased, has, on the day of the date hereof, prayed an attachment, at the suit of himself as said administrator, for rent, for the sum of two thousand dollars, with interest from the 1st day of January, 1872, against said John T. Phinizy, Eliza P. Phinizy, J. W. Falk, and Thomas Lile, and has obtained the same returnable to the next term of the Circuit Court of said county of Lawrence: now, if the said plaintiff shall prosecute his attachment to effect, and pay the defendants all such damages as they may sustain from the wrongful

VOL. LVI.

[Masterson v. Phinizy.]

or vexatious suing out of such attachment, then this obligation to be void," &c.

The complaint, as amended, averred that said attachment was wrongfully sued out: that no cause existed for suing out: that he (plaintiff) was not about to remove his crop from the rented lands without paying the rent, and had not removed any part of it without the consent of the landlord; also, that the cotton levied on under the attachment belonged to him alone, and the other defendants in the attachment suit had no interest in it; and that he was the only person injured by the suing out and levy of the attachment, and the only person interested in this suit. The defendants demurred to the complaint as amended, on the ground that it showed no right of action in the plaintiff alone, and that the other obligees in the bond ought to have been joined as plaintiffs; but the court overruled their demurrer. The record does not show what pleas were filed, but the cause was submitted to a jury on issue joined.

On the trial, as the bill of exceptions states, the plaintiff offered in evidence the deposition of J. W. P. Kelly, to whom he had agreed to sell his cotton, about sixty bales, at the time when the attachment was sued out; the contemplated sale, of which the plaintiff in attachment was notified, being the cause of suing out the attachment. The material part of said deposition is contained in the following extract: "The best of my recollection is, that Mr. Phinizy told me that there was some liens on the cotton—laborers' liens, and rent liens; and he wished me to deposit with some leading merchant in Hillsboro, Messrs. Gunn & Watts, I believe, about two thousand dollars, to satisfy all the claims on the cotton, as he wished to do what was right, and did not wish me to get into any trouble about it. He said, also, he wished me to go out to the gin where the cotton was, and to take an additional sum to pay off the hands that made the cotton. Every thing against the cotton, and all the liens on it, were to be satisfied in full before I paid for the cotton and took possession of it. He told me of all the liens on the cotton of his own accord, and assured me I should have no trouble about it. I went down to Hillsboro at the time appointed, with money sufficient to pay for the cotton; but it was raining very hard when I got there, and I did not do any thing but set another day to go back. My best recollection is, that we were to go out to the gin that day to see the cotton; but it was raining so hard we had to appoint another day. *My understanding with Mr. Phinizy was, that Mr. Masterson would meet us that day at Hillsboro, to receive the amount due*

*for rent,* but he failed to come. None of the cotton had been moved from the gin-house at that time, that I know of; and my recollection is, that we were to weigh it at the gin. At the time I purchased the cotton, I offered to pay him, as an advance, any money he desired; but he refused to receive a dollar until the liens were satisfied." The defendant moved the court to exclude from the jury the italicized words in this extract, and reserved an exception to the overruling of his motion.

The overruling of the demurrer to the complaint, the refusal to suppress the specified portion of Kelly's deposition, and other rulings which it is not necessary to notice, are now assigned as error.

THOS. M. PETERS, with W. P. CHITWOOD, for appellant.— 1. The plaintiff could not sue alone on the bond, unless the other obligees had transferred to him their interest in it.— *Bedell's Adm'r v. Smith,* 37 Ala. 619; *Dwyer v. Kennemore,* 31 Ala. 404; *Mason v. Hall,* 30 Ala. 724; *Shotwell v. Gilkey,* 31 Ala. 724; Rev. Code, § 2523.

2. The statement of Kelly which was objected to was mere hearsay—a detail of Phinizy's declarations, which had nothing to do with the issue.—1 Greenl. Ev. §§ 98, 99; *Scales v. Desha,* 16 Ala. 308; 2 Stew. & P. 28.

J. WHEELER, and JOHN PHELAN, *contra.*—1. The suit was properly brought in the name of John T. Phinizy alone, as he alone had sustained injury by the suing out of the attachment, and he alone was interested in the recovery.— *Miller v. Garrett,* 35 Ala. 96; *Gayle v. Martin,* 3 Ala. 593; *Boyd v. Martin,* 10 Ala. 700; *Ekle v. Purdy,* 6 Wendell, 629; *Sims v. Harris,* 8 B. Monroe, 55; *Pearce v. Hitchcock,* 2 Conn. 23; 1 Parsons on Contracts, ed. 1864, pp. 13–14; *Cunningham v. White,* 45 How. Pr. (N. Y.) 486. Parties can not join in an action, where there is no community of interests.—*Jones v. Etheridge,* 6 Porter, 208; *Parker v. Leak,* 1 Stewart, 525; *Riley v. Marshall,* 5 Ala. 682; *Strickland v. Burns,* 14 Ala. 511.

2. The testimony of Kelly was admissible as a part of the *res gestæ.*— *Gandy v. Humphries,* 35 Ala. 617; *Fail & Miles v. McArthur,* 31 Ala. 26.

BRICKELL, C. J.—The material ground of demurrer to the complaint, as amended, is, that the suit is brought by *one* only, of the four obligees of the bond; and it is insisted in support of it, that an action for a breach of the condition

of the bond, though it is averred the obligee suing alone sustained damage, is not maintainable without joining as plaintiffs all the obligees.

The bond is payable to the obligees jointly, and its condition is for the payment to them of "all such damages as they may sustain from the wrongful or vexatious suing out of the attachment." It contains no covenant to or with, nor any stipulation in favor of the obligees severally. The unqualified rule of the common law is, that an action on a bond or covenant must follow the nature of the interest disclosed on its face. If the interest so disclosed is joint, the action must be in the name of all the living obligees. If the interest is several, the action must be several.—Add. Con. 946; 2 Chit. Con. 1340. In *Gayle v. Martin*, 3 Ala. 593, a bond was executed for the replevy of a steamboat, payable to several libellants, with condition to pay several and distinct judgments in favor of each; and it was held, that the legal interest was vested in all the obligees, and all must join in an action for its breach. The precise question raised by this demurrer was presented in *Boyd v. Martin*, 10 Ala. 700, in an action on a bond given to obtain the issue of an attachment, which was levied on the property of one only of the several defendants and obligees. An action for a breach of the condition, it was held, was properly brought in the name of all the obligees.

The covenant or obligation is joint, or joint and several, or several, according to the nature of the interest disclosed within its *four corners*. The action must follow the nature of that interest: there is no right of election in the obligees, to sue upon it severally or jointly, because of the damages resulting from its breach.—2 Chit. Con. 1351. The obligation or covenant will be construed joint or several, according to the interest of the parties, as that appears on its face, if the words are capable of that construction. To authorize the construction, when the interest is *prima facie* joint, that the obligees can take or sue severally, it must be manifest that it was intended a separate and distinct duty should arise to each of them.—Add. Con. 947.

As we have said, the bond in all its terms is joint, not several. There is no ground for argument from these terms, or the purposes for which the bond is required, that will justify its interpretation as operating to create a several interest in the obligees. The indemnity of each and all the obligees, who are defendants in the writ of attachment, against any and all damages resulting from the wrongful or vexatious use of the process, is the purpose of the bond. Each one and all are entitled to its security. If one could sue, and recover the damages he had sustained, the penalty of the bond might

be exhausted, and the others left remediless. The obligors would be vexed with several suits, and the courts left in doubt for whom judgment should be given. The averment that the appellee alone has sustained damage, can not change the character of the obligation, or the nature of the interest it creates. The character and nature arise out of its terms; and these can not be departed from, because damages result to one only of the obligees, or result to the obligees in different proportions. The demurrer to the complaint should have been sustained.

2. What a party may say cotemporaneously with the doing of a particular act, may, in general, be proved, as constituting a part of the *res gestæ*, if it is explanatory of, or tends to characterize the act. The sale by the appellee to Kelly was the *res gestæ*—it was, as we infer, the act which induced the assertion that the appellee was about removing the crop without paying the rent. It was certainly competent for the appellee to show that payment of the rent, before removing the cotton, was one of the terms of sale.—*Pitts v. Burroughs*, 6 Ala. 733.

For the error in overruling the demurrer to the complaint, the judgment must be reversed, and the cause remanded.