[Adler & Co. v. Western Railway of Alabama.]

# Adler & Co. *v.* Western Railway of Alabama.

## *Damages for Setting Out Fire.*

(Decided April 22, 1915.  68 South. 361.)

*Railroads; Fires; Lease; Exemption; Assignment.*—Where G. leased a warehouse on a railroad right of way, and the lease exonerated the railroad from damages by fire and also gave the tenant, his successors and assigns, an option to continue the lease for another term of ten years on giving sixty days' notice prior to its termination, and the lease was assigned to another who continued in possession after the expiration of the term, and four months after its expiration, notified the railroad company that as assignee of the lease he held possession of the property and privileges set forth thereunder under the terms of the lease for another period of ten years, the assignee was bound by the covenant of exoneration, whether, prior to the expiration, the covenant was merely personal and not binding on the assignee, since he had not exercised his option of renewal in the time limited, and the consent of the railroad to another term thereafter was a sufficient consideration for his agreement to hold under the terms of the lease.

APPEAL from Dallas Circuit Court.

Heord before Hon. B. M. MILLER.

Action by L. C. Adler & Company against the Western Railway of Alabama. Judgment for the defendant, and plaintiff appeals. Affirmed.

The lease referred to in the opinion was as follows: State of Alabama, County of Dallas.

This indenture, made and entered into this 4th day of January, 1902, by and between the Western Railway of Alabama, a corporation, Landlord, and E. Gillman, of Selma, Alabama, tenant, witnesseth:

That in consideration of the construction and erection thereon of a wood building, with metal roof, according to plans and specifications to be approved by the president or engineer of said railway company, to be used for warehouse purposes, and the sum of one dollar in hand paid to said Western Railway Company

by said E. Gillman, the receipt whereof is hereby acknowledged, the said Western Railway of Alabama has granted, demised, leased and let unto the said E. Gillman, his representatives and assigns, that certain tract of land situated in the county and state aforesaid, and particularly described as follows, to wit: Beginning at a point on the south line of Burnsville road, or Water street, one hundred and nineteen feet southwesterly from the northeast corner of the property of the Western Railway of Alabama, thence southeasterly at right angle for a distance of sixty feet; thence southwesterly paralleled to the track for a distance of one hundred and thirty-five and one-half feet; thence northwesterly for a distance of fifty-six feet to said Burnsville road or Water street; thence northeasterly along the south side of said Burnsville road for a distance of one hundred and thirty-five feet to a place of beginning, more particularly shown on the plat hereto attached.

To have and to hold the said tract or parcel of land unto him, the said E. Gilman, his representatives and assigns for the term of ten years from January 13, 1902, and the further term hereinafter mentioned. And upon the completion of said building the said Western Railway of Alabama agrees to switch freight in carload lots to and from said warehouse on the tracks adjacent thereto, without charge when said freights pass over the railroad of the landlord to and from Selma, Alabama. And switch to and from the warehouse of the tenant freights in car load lots shipped by tenant to and from Selma, Alabama, by other roads at the rate of $2 (two dollars) per car. And in case the said building is not properly constructed the said landlord shall have the power and right to re-enter the said premises hereby leased and enjoy the same as if this lease had not been made. And the tenant, in addition

to the construction of said building, agrees to pay all taxes legally assessed against said land and building during the term of lease. In case of loss of said building by fire the tenant shall have the option of rebuilding the improvements or of cancelling the lease, and shall notify the landlord within (30) thirty days after such fire of his election either to rebuild or terminate the lease. The improvements, if rebuilt, shall be equal to the old, and of the same plan and specifications unless otherwise agreed between the parties hereto, and shall be covered by the same agreement.

The tenant shall hold the landlord harmless for all claims for injury or loss whatsoever to material or property on the leased premises resulting from fire from locomotives or any other cause.

The tenant agrees to route by the railroad line of the landlord all freight which the tenant controls, which the landlord can carry via its line at rates of freight equal to those of other lines. As part of the consideration herein the tenant herein grants to the landlord the right and option after 90 days written notice given prior to the termination of said lease of purchasing the building erected by the tenant on said leased property at the end of said year's period at seventy per cent. (70 per cent.) of the actual cost (not exceeding three thousand) of said building, as shown by a statement to be verified by said tenant and attached to this lease.

And the said Western Railway of Alabama agrees and covenants that the said E. Gillman, his successors and assigns, shall quietly enjoy the said premises hereby leased during the term aforesaid, he, the said Gillman, performing the covenants herein mentioned.

And in the event the landlord shall not exercise said option of purchase at the end of said ten years the said E. Gillman, tenant, his successors or assigns, shall have

option after (60) sixty days' written notice given prior to the termination of said lease, either to remove the material in said building from the leased premises, and render the same to the said Western Railway of Alabama, owner, or to continue the occupation of same for another ten years' period under this agreement, in which event the said Western Railway of Alabama reserves the right to terminate the said lease at any time by giving to said E. Gillman, his successors or assigns, twelve months' notice in writing of its intention to make said termination. In case said lease shall be so terminated the Western Railway of Alabama shall pay to said E. Gillman, his successors or assigns 70 per cent. (seventy per cent.) of the original cost of said building as shown by a statement to be attached hereto, less six per cent, depreciation upon said sum computed from the commencement of the second period of ten years under said lease. And in case the Western Railway of Alabama shall not exercise its option for the termination of said lease as herein provided, said E. Gillman, his successors and assigns, shall at the end of the second period of ten years, surrender the said leased premises to the owner, reserving the right to remove from said premises all material thereon.

In witness whereof, said Western Railway of Alabama has hereunto caused its name to be written by its president, Charles A. Wickersham, and its corporate seal to be attached and attested by its secretary, F. H. Hill, and the said E. Gillman, has hereunto set his hand and seal the day and year first above written.

> The Western Railway of Alabama
> By [Signed] Charles A. Wickersham,
> > President.

E. Gillman.

The plat referred to in said contract is as follows: Not necessary to be here set out.

PARTRIDGE & HOBBS, for appellant.

GEORGE P. HARRISON, REESE & REESE, and J. R. SATTERFIELD, for appellee.

SOMERVILLE, J.—The plaintiff sued the defendant railroad company for setting fire to and destroying on, to wit, November 24, 1912, his warehouse and its contents, located on a lot adjoining the defendant's right of way.

The defendant interposed a special plea which may be summarized as follows: On January 4, 1902, the defendant leased the warehouse premises to E. Gillman and assigns, "for the term of ten years from the 4th day of January, 1902, and the further term hereinafter mentioned," viz.: "In the event the landlord shall not exercise said option of purchase at the end of said ten year period, the said E. Gillman, tenant, his successors or assigns, shall have option after 60 days' written notice given prior to the termination of said lease, either to remove the material in said building * * * or to continue the occupation of same for another ten years' period under this agreement."

Gillman occupied the premises under this lease until June 16, 1906, when he executed to Laughlin & Co. a written assignment of the lease, along with a grant of all his title and rights thereunder; and on September 10, 1906, Laughlin & Co. assigned their rights, title, and interest in the lease to the plaintiff's, L. C. Adler & Co. Thereafter Adler & Co. entered into possession, and on May 8, 1912, they wrote and delivered to the defendant this notice: "This is to notify you that as

assignee of the lease executed between you and E. Gill-man on January 4, 1902, we are holding possession of the property and privileges set forth in said lease *under the terms of said lease* (italics supplied) for another period of ten years."

The plea concludes as follows: "L. C. Adler & Co., by the writing and delivery of said letter, elected to extend the said lease under the option allowed the original tenant and his assigns for ten more years; and the defendant accepted the same and continued said lease with plaintiffs, and when the fire occurred, as alleged in the complaint, the plaintiffs were in possession of the premises described in said lease, holding the same as above averred."

The demurrer to this plea presents two questions: (1) Are the plaintiffs contractually bound by that covenant of the lease which requires that "the tenant shall hold the landlord harmless for all claims for injury or loss whatsoever to material or property on the leased premises resulting from fire from locomotives or any other cause?" (2) If not contractually binding on plaintiffs, did this convenant nevertheless run with the land so as to bind them as assignees of the leasehold, by virtue of their privity of estate with the landlord?

The covenant to extend this lease for a second period of ten years was a present demise on condition.— *Tenn. Co. v. Pratt Co.,* 156 Ala. 446, 47 South. 337; 24 Cyc. 1008. It ran with the land, it is true, but, by its own specific terms, it bound both the original tenant and his assigns to an occupation "under this agreement"—which could only mean under this contract of lease.

When the plaintiffs, as assignees of the original lease —and then by reason of long delay being without right to do so—elected to continue their occupation and priv-

ileges, they expressly declared that they were doing so "under the terms of said lease." And when the defendant—then armed with the right to terminate their occupation and privileges—accepted them as tenants for the extended period, he clearly did so with the understanding that the terms of the original lease should continue in full force and effect. The covenant of exoneration was one of these terms. It was prospective in its operation, and from its very nature it defined the relation of the landlord to the actual occupant and user of the premises, whoever he might be, throughout the term, rather than to the original tenant only.

Our conclusion, upon a consideration of the entire contract and the relation of the plaintiffs thereto, is that they must be held to have assumed those obligations which the contract imposed upon the original tenant, and which are continuous in their nature and contingent in their operation or performance; and that the covenant of exoneration is of such a character.

The argument in denial of this conclusion is—assuming for the argument that this covenant was personal and did not run with the land—that as assignee the plaintiffs were not bound by it during the original term; that they were equally free during the extended term, to which they were entitled by virtue of the assignment and not by virtue of any subsequent agreement with the landlord; and hence that their election to extend their occupation "under the terms of the lease" contemplated only such terms as already bound them, viz., the covenants real in the lease.

This view is specious and plausible, though somewhat artificial. But, whatever of merit it might otherwise have, it is refuted by the consideration that, at the time of the plaintiffs' written notice of the extension of their former leasehold, they were in default as to the giving

33—192

of that notice, and the defendant's acceptance of their proposition to continue their tenancy was entirely optional on his part; so that their undertaking must be construed according to the ordinary, common sense meaning of the language employed, and not restricted by its supposed relation to an invalid claim of right. In short, the landlord's waiver of his right to forthwith reclaim the premises is a sufficient consideration for the assignee's asumption of every unexecuted obligation imposed by the terms of the original lease upon the tenant for the benefit of the landlord.

We deem it unnecessary to determine whether the covenant in question is a real covenant which binds the assignee by mere privity of estate; or whether, if not technically a real covenant, an intention to bind assignees thereby is deducible from the terms of the original contract.

The general subject is discussed at some length in *Gilmer v. M. & M. Ry. Co.*, 79 Ala. 569, 58 Am. Rep. 623, *Etowah Co. v. Wills Valley Co.*, 121 Ala. 672, 25 South. 720, and in Judge Freeman's note, 82 Am. St. Rep. 659; and the tendency of the modern authorities seems to be to uphold the view that a covenant for exoneration of the landlord from liability for causing loss by fire is binding upon the assignee of the lease.—*Kenneday v. Iowa State Ins. Co.*, 119 Iowa, 29, 91 N. W. 831; *Wooldridge v. Ft. Worth Co.*, 38 Tex. Civ. App. 551, 86 S. W. 942. See, also, *Webb v. Robbins*, 77 Ala. 176, 183.

It results, from our conclusion as above stated, that the demurrer to the plea was properly overruled, and the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur