(81 South. 85)

PATTERSON v. ATLANTIC COAST LINE R. CO.   (4 Div. 755.)

(Supreme Court of Alabama.   Jan. 16, 1919.)

1. RAILROADS &#8733;64(1)—EASEMENT FOR SPUR TRACK—TERMINATION OF RIGHT—NOTICE.

Where three contiguous lot owners made a contract with defendant railroad for construction and operation by the latter of a spur track on and over the lots, which contract was not renewed, *held* that a written notice to terminate by two of the owners was sufficient, where the other owner had been adjudged bankrupt and his lot sold to third person. (Per Thomas, Somerville, and Gardner, JJ.)

2. RAILROADS &#8733;69—CONSTRUCTION OF SPUR TRACK—NATURE OF TENANCY.

Contract between contiguous lot owners and defendant railroad for construction and operation by the latter of a spur track over and on the lots of the former *held* to create a leasehold for one year, and thereafter a tenancy at will, when not renewed on 30 days' notice as provided. (Per Thomas, Somerville, and Gardner, JJ.)

---

&#8733;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[6] 201 Ala. 19.

3. RAILROADS ☞64(1)—AGREEMENT FOR CON-
STRUCTION OF SPUR TRACK—TERMINATION.

Provision in contract between contiguous
lot owners and defendant railroad that spur
track should not be used in service of others
did not extend right of service to subsequent
purchasers for a longer term than that for
which original parties had stipulated.  (Per
Thomas, Somerville, and Gardner, JJ.)

4. RAILROADS ☞64(1) — AGREEMENT FOR
MAINTENANCE OF SPUR TRACK—CONSTRUC-
TION.

Where such contract was not renewed by
30 days' written notice as required, provision
that, when such written notice had been given,
contract should continue until notice of termi-
nation, would not operate.

5. RAILROADS ☞69—CONTRACT FOR USE OF
LAND—"SCINTILLA INTEREST."

Where such contract was not renewed in
writing after the first year, as provided therein,
the occupancy thereafter was only a tenancy at
will, amounting to no more than a "scintilla
interest" or way over the lands of the other for
the permissive period.  (Per Thomas, Somer-
ville, and Gardner, JJ.)

6. RAILROADS ☞64(1)—CONTRACT FOR MAIN-
TENANCE OF SPUR TRACK—TERMINATION.

If the parties, after bankruptcy of one own-
er, had entered into a contract for a joint use,
the power of termination would have rested
in the surviving owners, and not in their suc-
cessors in title.  (Per Thomas, Somerville, and
Gardner, JJ.)

7. EASEMENTS ☞26(1) — "PREDIAL SERVI-
TUDE."

Where there was a division or subdivision
of the servient tenement by purchase of part
of realty at bankruptcy sale, neither the pur-
chaser nor its assigns can claim the right of
"predial servitude" citing 6 Words and Phrases,
5492, "Prædium Serviens." (Per Thomas, Som-
erville, and Gardner, JJ.)

8. RAILROADS ☞64(1) — RIGHT OF WAY FOR
RAILROAD TRACK—RIGHT OF PURCHASERS.

Where one of the owners was adjudged a
bankrupt and its lot sold, no period of enjoy-
ment short of the bar of the statute or per-
missive use would give purchaser at bankruptcy
sale or its assignee a right to continued use of
right of way.  (Per Thomas, Somerville, and
Gardner, JJ.)

9. RAILROADS ☞64(1) — MAINTENANCE OF
SPUR TRACK—TERMINATION OF RIGHT.

Such contract held to expire by its express
terms on the expiration of one year, where
there was no written extension, so that it was
no bar to action of ejectment.

10. RAILROADS ☞69—MAINTENANCE OF SPUR
TRACK—PREDIAL SERVITUDE.

Such contract fixing its duration at one
year, held, although continued in force by im-
plied consent after expiration of year, not to
create a predial servitude, which ran with
the land.  (Per Thomas, Somerville, and Gard-
ner, JJ.)

11. JUDICIAL SALES ☞50(1) — DOCTRINE OF
CAVEAT EMPTOR—APPLICABILITY.

The doctrine of caveat emptor applies to a
judicial sale.  (Per Thomas, Somerville, and
Gardner, JJ.)

12. RAILROADS ☞69 — CONTRACT FOR SPUR
TRACK—CONSTRUCTION.

Such contract held not one to which should
be applied the presumption of a tenancy at
will, for years, or by the month, from the mere
fact of holding over.  (Per Anderson, C. J., and
Mayfield and McClellan, JJ.)

13. RAILROADS ☞64(1)—CONTRACT FOR SPUR
TRACK—CONSTRUCTION.

Such contract should be construed as of the
time when it was made, and not as to condi-
tions which may exist six or seven years there-
after.  (Per Anderson, C. J., and Mayfield and
McClellan, JJ.)

14. CONTRACTS ☞143 — UNCONSCIONABLE
AGREEMENT—CONSTRUCTION.

Although the parties are all sui juris, to
hold them to a contract almost, if not quite,
unconscionable, the language used and acts
done under and in connection with it must be,
clear and definite and not uncertain.  (Per An-
derson, C. J., and Mayfield and McClellan, JJ.)

15. CONTRACTS ☞154 — UNCONSCIONABLE
AGREEMENT—CONSTRUCTION.

If susceptible of two constructions, one of
which will prevent ruinous results to the par-
ties, that construction should be adopted, rath-
er than the other.  (Per Anderson, C. J., and
Mayfield and McClellan, JJ.)

16. RAILROADS ☞64(1)—CONTRACT FOR CON-
STRUCTION OF SPUR TRACK—EXPIRATION.

Where such contract contained express pro-
vision as to its renewal in writing after expira-
tion of one year, continued use for several
years after expiration of time specified would
not, although no steps were taken to oust de-
fendant or some of parties, continue the con-
tract.  (Per Anderson, C. J., and Mayfield and
McClellan, JJ.)

Sayre, J., dissenting.

Appeal from Circuit Court, Houston Coun-
ty; H. A. Pearce, Judge.

Ejectment by M. J. Patterson against the
Atlantic Coast Line Railroad Company.
Judgment for defendant, and plaintiff ap-
peals. Reversed and rendered.

The portions of the contract directed to be
set out are as follows:

"The parties of the second part covenant and
agree: * * *

"Thirteenth. It is mutually covenanted and
agreed that this contract shall remain and be
in force for the space of one year from date
hereof, provided there is in the meantime no
violation or breach of any of the stipulations
on the part of the said party of the second
part; that at the end of the said period of one
year, if this contract shall then be in force and
effect under its terms and stipulations, it may
be renewed and extended by the party of the

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

second part for another period of one year, upon the same terms, conditions, and stipulations as are herein contained upon the parties of the second part, giving to the railroad company, at least 30 days before the expiration of the said one year, written notice of their intention and desire for such renewal and extension, and in such event, upon such written notice being given, this contract shall be renewed, extended, and continued for a second period of one year: Provided, however, that the parties of the second part shall be in successful operation and business at the end of the said first period of one year, when the said written notice shall be given: And provided, that the amount of freight shipped to and from said side track, for the account of the party of the second part, shall be in the opinion of the said railroad company sufficient to justify such extension and renewal of this contract and the maintenance of the said side or spur track, and continue in force thereafter, and until 30 days' written notice shall be given by either the said railroad company or the parties of the second part to the other of its desire to terminate and end the same. Upon such written notice then so given, this contract shall terminate and be at an end.

"Fourteenth. That the said railroad company shall have the right, privilege, and power to cancel, annul, determine, and put an end to this agreement upon 30 days' notice in writing to the parties of the second part, and same shall be likewise canceled, in the event of the failure of the said parties of the second part to keep and perform any of the covenants and conditions, agreements and stipulations, herein contained on its part to be kept and performed."

W. R. Chapman, of Dothan, for appellant.
John R. Tyson, of Montgomery, for appellee.

THOMAS, J. The suit is in the nature of ejectment. The error assigned is based upon the court's refusal to give the general charge requested in writing by the plaintiff.

In short, the facts are that on November 30, 1911, M. J. Patterson, Dothan Foundry & Machine Company, and Dothan Hardware Company, owning contiguous lots, entered into a contract with Atlantic Coast Line Railroad Company, for the construction, maintenance, and operation for the time indicated, of a spur track leading from its main line across two of the lots into that of the Dothan Hardware Company, which contract was executed. Neither of the parties had any interest in the others' land before and at the time the contract was executed.

The locus in quo, shown by the recitals of the agreed statement of fact, was the following described lands, owned by the plaintiff on the date of the execution of the contract, situated in the city of Dothan, Houston county, Ala., viz.: One strip of land situated on the west side of North Appletree street, facing said street 15 feet and extending back in a westerly direction and even length of 124 feet, being bounded east by North Appletree street, west by Dothan Foundry & Machine Company lot, and north and south by the property of M. J. Patterson.

Prior to institution of the suit, when Dothan Hardware Company, owner of the last lot into which the spur track extended, was adjudicated a bankrupt, it ceased to exist, and the lot in question was purchased at its bankrupt sale by Malone Bros., who thereafter sold a portion of it to Dothan Grocery Company. More than 30 days prior to institution of the suit, and long after Dothan Hardware Company had ceased to exist, written notice to terminate the contract was given defendant by M. J. Patterson and Dothan Foundry & Machine Company. This notice was not joined in by either Malone Bros. or Dothan Grocery Company.

It was admitted that at the time of bringing suit and of giving said notice, there were located on the spur track business houses of M. J. Patterson and Dothan Foundry & Machine Company, in which business was conducted as when the contract was executed; that the warehouse of Malone Bros., also located thereon, was receiving the same use of the spur track formerly received by Dothan Hardware Company; and that Dothan Grocery Company in the conduct of its business received freight over said spur track, at its place of business erected on a portion of the Dothan Hardware Company lot.

Defendant admitted possession of the land sued for, at the time of notice and of the institution of the suit, and that plaintiff owned fee-simple title to same, subject to whatever rights defendant had by virtue of the contract. It had been more than two years prior to the institution of suit, since plaintiff received a shipment of freight delivered over this spur track.

[1] Appellant insists that the only parties to the original contract, who had capacity for parties of the second part to terminate the contract, and who were bound by its covenants and stipulations, desiring to terminate the same under its terms, gave due notice of termination to the defendant. On the other hand, the insistence is that the bankruptcy of the Dothan Hardware Company and the purchase of its properties by third parties at judicial sale made termination dependent upon written notice joined in by the purchasers.

The contract recited that the parties of the second part had requested the construction of the side track for their use and benefit; and the respective footages on their properties, over which the same should extend, was stipulated. Its recited consideration was "the sum of one dollar * * * and * * * the mutual advantages to accrue to the parties hereto."

It was covenanted on the part of the railroad company: (1) That it would furnish all material, and at the expense of the second

parties construct the spur track, the title to the materials so furnished to be retained in the company; and (2) to deliver and receive cars and freight shipments consigned to or from parties of the second part. The parties of the second part agreed to grade the road-bed, exonerate the party of the first part from liability as a common carrier, and to load and unload cars promptly at their own expense; to pay car service charges and observe the rules of the Public Service Commission and demurrage bureau; to release from damages for nondelivery of freight or of cars, and for that negligently caused by defendant to stock; to release "from all claims for damages owing to or resulting from fire communicated to any improvements located or placed on or contiguous to said spur track," and to indemnify the first party against all such claims by others, to maintain and repair crossings; and to pay all taxes and .assessments, and maintain lights, etc., for switches and crossings. It was further covenanted by second parties that they would each "ship and receive over the line of the railroad controlled and operated by the said railroad company all goods delivered by them or received by them to and from points reached by the line of railroad of the said railroad company, and its connecting lines or roads, provided that the rates or freight charges of the said railroad company shall not be higher than the lawful rates over other transportation companies for like goods to and from such points and that reasonably prompt service and delivery is made." Paragraph 8.

The reporter will set out the thirteenth and fourteenth paragraphs of the contract, giving the period of time in which the contract was to be of force and the method by which it should be terminated.

The moving consideration for this contract, on the part of the railroad company, was that the second 'parties should and would each "ship and receive over the line of railroad controlled and operated by the said railroad company all goods delivered by them or received by them to and from points reached by the line of railroad of the said railroad company, and its connecting lines or roads," on an equal freight rate with that obtaining over other transportation lines for like goods to and from such points, and the lawful freight charges to be realized on such shipments, and that, in addition, on the basis of the lawful freight charges therefor, the railroad company should have the control of such freightage over its connecting lines.

The consideration moving to the parties of the second part for the contract was facility in freight movement, together with diminished drayage and like expenses, to result from the individual use of the spur to each of the parties in the conduct of their several individual and corporate businesses, whether located on the spur or elsewhere in Dothan.

The stipulated period of time in which the contract was of binding force, and the specified method of termination or of renewal, are matters of controlling importance. Under the lease: (1) The original parties were bound for one year, unless contract sooner terminated by the railroad company for cause; and to that term the right of renewal on condition was appended. (2) The option of renewal was to be expressed in writing, and, if renewed, the contract was to continue and be of force upon the same terms, conditions, and stipulations as at first, for another or additional period of one year, provided the second parties should be in the successful operation of business at such time, and provided the amount of freight shipped to and from said side track to the account of the second parties should, in the opinion of the railroad company, justify the extension and renewal, and was to continue in force until terminated by either of the contracting parties on 30 days' written notice. (3) The railroad company was to have the right to terminate at any time, upon 30 days' notice in writing to the parties of the second part, in the event of the failure of the latter to keep and perform any of the covenants and stipulations on their part.

[2] Thus there was created a leasehold estate for a one-year period, and thereafter only a tenancy at will, when not renewed under the terms of the contract. T. C. I. & R. R. Co. v. Pratt Co., 156 Ala. 446, 47 South. 337; Adler & Co. v. Western Railway of Ala., 192 Ala. 507, 68 South. 361.

The record is silent as to a renewal in writing by plaintiff, Dothan Foundry & Machine Company, and Dothan Hardware Company, or as to a renewal by the successors of the two parties of the second part, plaintiff and Dothan Foundry & Machine Company, after the dissolution of Dothan Hardware Company. As among themselves the second parties had controlling reasons for entering into the contract which did not then, nor later, so far as the record shows, obtain as to the third party purchaser at said judicial sale. No provision of the contract required any of the original parties to enter into the contract with the other parties, or to a continuance thereof with each other or with third parties. Each party had, and reserved to himself or itself, the freedom of contract as to this subject-matter, after the expiration of the one-year period.

[3] The agreement showed that the spur track was to be erected as a private way, and to be used for a limited time and for individual purposes, and was not to be used by the second parties for or in a joint enterprise or business. It expressly stipulated that the spur should not be used by the defendant

company in the service of others, except to the extent specifically stipulated. This clause limiting service as to others was not intended to extend the right to subsequent vendees for a longer term than that for which the original parties had contracted, but contemplated that, if extended to and enjoyed by third parties, such service should not be to the prejudice of the original parties of second part. Certainly this incidental provision for a limited service to third parties was not intended or permitted by the terms of the contract to defeat the right of termination at will, so carefully reserved and stipulated for by the respective contracting parties. If the provision for limited service is given the effect that either of the parties, by collusion with or assignment or extension of the service to third parties, may subject the lands of either of the other parties to the contract to a different or longer servitude than that contracted for, such construction would amount to the making of a new contract for the parties.

[4] The bankruptcy of the Dothan Hardware Company rendered impossible its further participation in and contribution to the real consideration on which the contract rested, and likewise its joinder in a written renewal or a termination. A renewal by implication or operation of law would appear to have been guarded against by express limitation. Crommelin v. Thiess & Co., 31 Ala. 412, 70 Am. Dec. 499; Adler & Co. v. Western Railway of Ala., supra; Walker v. Gunnels, 188 Ala. 206, 66 South. 45. If the contract could be renewed and extended by second parties only upon their giving to the railroad company, at least 30 days before the expiration of the said one year, "written notice of their intention and desire for such renewal and extension, and in such event, and upon such written notice being given, this contract shall be renewed, extended and continued for a second period of one year," conditioned on the fact "that the parties of the second part shall be in successful operation and business at the end of the said period of one year"; and if there was no such written renewal, would not the subsequent contract provision that "when the said written notice shall be given, and provided that the amount of freight shipped to and from said side track, for the account of the party of the second part, shall be in the opinion of the said railroad company sufficient to justify such extension and renewal of this contract and the maintenance of the said side or spur track and continue in force thereafter and until 30 days' written notice shall be given by either the said railroad company or the parties of the second part to the other of its desire to terminate and end the same, and upon such written notice then so given this contract shall terminate and be at an end," have no field for operation? The bankruptcy of the Dothan Hardware Company had defeated the contingency of successful operation of its business, extinguishing the right of renewal of the second parties by diminishing the total amount of freight to be shipped to and from said side track, and required to justify the renewal and maintenance of the same; that is, put it in the power of the railroad company to decline renewal on the ground of Dothan Hardware Company's failure to conduct its business.

[5] After the first-year period contracted for was terminated, if the use was continued by the parties and by Malone Bros., without a renewal in writing as provided for, the occupancy thereafter was only a tenancy at will by those who used the way in the operation of their business, amounting to no more than a "scintilla interest" or way over the lands of the others for the permissive period. Tiedeman on Real Prop. § 312; 1 Tiffany on Real Prop. § 355.

[6] Had the parties entered into contract for a joint use, after the dissolution of the Dothan Hardware Company, the power of termination would have rested in the survivors, and not in the successors in title. Bishop on Contracts, § 863. Strictly speaking, the contract was not joint, but was several as to the properties to be affected, the liabilities to be incurred, and the objects to be attained. Such was the intent of the contracting parties, expressed in the four corners of the instrument. In this phase it is not open to construction; it is self-explanatory.

Analogous authority, upon the severalty of a contract, is Burton v. Henry, 90 Ala. 281, 7 South. 925, involving sale under a decree in chancery fixing a price on several parcels of land held by different owners. The justice said:

"The contract, while nominally inuring to all the promisees—i. e., made with all of them—shows upon its face distinct and several rights were intended to be secured. Not only so, it is very clearly indicated that these separate rights may be separately asserted. Moreover, the interest of the promisees is not only not joint, but is, in the very nature of things, even aside from the language of the instrument, adverse each to the other, and the proceedings provided for by the agreement, for the effectuation of whatever equities the parties respectively had in the subject-matter, whether as between them, or any one of them, and Henry, and also as between themselves, are directly adversary in character. The most casual consideration of the facts outlined above will demonstrate this to be true."

[7] It is submitted, as a controlling reason for the insufficiency of the notice given by plaintiff and Dothan Foundry & Machine Company to terminate, that appellee would have no right to discontinue the contract on such notice, "for the contract of service is individually and separately with each of

the three persons constituting the parties of the second part." This view is sought to be supported by the text of 2 Washburn on Real Property, which is as follows:

"A predial servitude or easement is a charge upon the servient tenement, and follows it into the hands of any one to whom such estate or any part of it is conveyed. And as it is annexed to the estate for the benefit of which the servitude is created, the right is not destroyed by a division of such tenement. The owner or assignee of any part of it may claim the right, so far as it is applicable to his part of the property, provided it can be enjoyed by the several estates without increasing the burden or charge upon the servient estates."

In the case in which this rule found expression, the grantor had sold a parcel of land opening upon another lot, which the grantor covenanted should remain open for purposes of light, etc.; the grantee sold a part of his estate to the plaintiff, and then, the original grantor having sold the open lot to the defendant, the latter began to build upon it in such wise as to obstruct this light. Upon a bill in equity by the plaintiff, to restrain him from infraction of this covenant running with the land, an injunction was granted restraining defendant as prayed. Hills v. Miller, 3 Paige (N. Y.) 254, 24 Am. Dec. 218. It is to be noted, however, that the rule was declared to be subject to the condition that the owner or assignee must be able to enjoy the predial servitude without "increasing the burden or charge upon the servient estates." 2 Washburn on Real Property, § 1240.

It may not be necessary to advert to the several definitions of "prædial servitude," as the words are used by Mr. Washburn. However, we may say that the words prædium serviens, in civil law, are defined by Mr. Black to be an estate which suffers a servitude or easement to another estate; "the servient tenement." To like effect are 3 Bouvier's Law Dict. p. 2650; 6 Words and Phrases, 5492. In Morgan v. Mason, 20 Ohio, 401, 409 (55 Am. Dec. 464), the justice observed of the right of erecting a dam and flowing back the water upon "the estate of May, for the advantage and convenience of the estate they purchased, on which the mill was situated" that—

"A late learned writer (Angell on Water Courses, § 142) informs us that they were treated of by the civil law under the name of services, where they were divided into real and personal. The former were defined to be 'a service which one estate owes to another, or the right of doing something, or of having a privilege in one man's estate for the advantage and convenience of the owner of another estate.' The estate unto which the service is due, is called prædium dominans, or the ruling estate; and the other estate which suffers or yields the service, is called prædium serviens, or an estate subject to a privilege or service. To constitute such service, it is there necessary that there be two estates, the one giving and the other receiving the advantage.'"

[8] With this understanding of a prædial servitude, and the important limitation of such use or easement on the part of a subpurchaser (clearly pointed out by Mr. Washburn), we note that in the instant case there was a division or subdivision of the "servient tenement" by the purchase on the part of Malone Bros. and their resale of a part thereof to Dothan Grocery Company. They, or such assigns, cannot claim the right as applicable to its part of the property so purchased at bankrupt sale. If the contract be construed as contended for on behalf of such purchasers, that construction would have the effect of increasing burdens upon the several estates of Patterson and Dothan Foundry & Machine Company; that is, if after the one or two year periods had expired, and a subdivision of such tenement, it be held that the original rights and liabilities growing out of the stipulations of the lease passed to such assigns of lessor or lessee, so as to render them enforceable for and against such assigns, such would be the effect of the holding that the contract could not be terminated and the spur track discontinued by Patterson and Dothan Foundry & Machine Company without the consent of Malone Bros. and their assigns. The remaining second parties evidenced their unwillingness to be longer bound to the use of their respective real properties, and to continue respective personal obligations under the contract, by giving written notice as provided in the instrument—the only notice possible to be given thereunder after the bankruptcy and dissolution of Dothan Grocery Company. No period of enjoyment (short of the bar of the statute) or permissive use, by Malone Bros. or by Dothan Grocery Company, of the right of way over the several lots of plaintiff and Dothan Foundry & Machine Company, gave or would give such parties a right under the lease contract to the continued use of the right of way.

[9, 10] The reversal of the case may well be rested on the fact that the contract had expired by its express terms, and there was no written extension of the same shown by the agreed statement of facts. However this may be, if it be held that the contract was continued of force by the implied consent of the parties, after the expiration of the time limit fixed therein, and the use on Malone Bros.' or Dothan Grocery Company's part was not extended beyond the statutory bar, we may inquire, on the other hand, whether a prædial servitude was created by the covenants of the lease that ran with the land and was of binding force for or against Malone Bros. or Dothan Grocery Company.

In the answer to these questions, it is necessary to note the effect of assignments

of an estate for years, or of the reversion expectant thereon, and of the incident rights and liabilities growing out of stipulations in leases, and whether the benefits of such contractual rights pass to the assigns of either lessor or lessee, so as to render them enforceable for and against assigns. The law on this subject is primarily determined by the statute of 32 Henry VIII (A. D. 1540), and by the construction placed upon the statute in Spencer v. Clark, Pasch. 25 Eliz. 16, in the King's Bench; s. c., 5 Coke, 16 (our Sup. Ct. Lib. 3 Coke's Rep. part 5, p. 16); s. c., 1 Smith's Lead. Cas. part 1, pp. 137–228. The statute was passed after the dissolution of the monasteries and the forfeiture of their lands by Henry VIII, for the purpose of enabling the crown, or those in whose favor the forfeiture was granted, to enforce the lease covenants of the lessees of the lands. Its primary purpose was that the benefits and the burdens of any covenants or conditions contained in the lease "should pass to the assigns of either a lessor or lessee." The statute is set out in Sims' Covenants, 71.

The construction of the statute (finding expression in Spencer's Case, supra), is to the effect, among other things: (1) That where a covenant extends to a thing in esse, parcel of the demise, such covenant shall go with the land, and "shall bind the assignee, although he be not bound by express words." (2) If the lessee covenants, for himself and his assigns, that they will make a new wall upon some part of the lands demised, the assignee is bound by such covenant. But the assignee, though named, is not bound by the covenant to do something which is merely collateral, and which in no manner touches the thing demised and assigned over. It is thus apparent that Spencer's Case imposed upon the statute limitations, the most important being:

(a) That a covenant will not run with the land if it be merely collateral, and doth not touch or concern the thing demised. This exception is thus stated:

"But although the covenant be for him and his assigns, yet if the thing to be done be merely collateral to the land, and doth not touch or concern the thing demised in any sort, there the assignee shall not be charged. As if the lessee covenants for him and his assigns to build a house upon the land of the lessor, which is no parcel of the demise, or to pay any collateral sum to the lessor, or to a stranger, it shall not bind the assignee, because it is merely collateral, and in no manner touches or concerns the thing that was demised, or that is assigned over; and therefore in such case the assignee of the thing demised cannot be charged with it, no more than any other stranger." Gilmer v. M. & M. Ry. Co., 79 Ala. 569, 572 (58 Am. Rep. 623); Addison on Contracts, § 430 et seq.

(b) That, even though the covenant touch or concern the land, "if it concerns likewise a thing which is not in esse at the time of the demise, but which is to be built or created thereafter, the covenant will not bind assigns unless they are expressly mentioned." This distinction between covenants as to things in esse, and those as to things not in esse, with the requirement of the mention of assigns in the latter case, though criticized by some courts (Willcox v. Kehoe, 124 Ga. 484, 52 S. E. 896, 4 L. R. A. [N. S.] 466, 4 Ann. Cas. 437; Masury v. Southworth, 9 Ohio St. 340, 350; Aikin v. Albany, etc., 26 Barb. [N. Y.] 289; Atlanta, etc., Co. v. McKinney, 124 Ga. 929, 933, 53 S. E. 701, 6 L. R. A. [N. S.] 436, 110 Am. St. Rep. 215; Smith's Lead. Cas. part 1 [7th Ed.] 137, 208), has been generally adhered to by English and by some of the American courts (Congleton v. Pattison, 10 East, 130; Emerson v. Simpson, 43 N. H. 475, 82 Am. Dec. 168, 80 Am. Dec. 184; Tallman v. Coffin, 4 N. Y. 134; Hansen v. Meyer, 81 Ill. 321, 25 Am. Rep. 282; Thompson v. Rose, 8 Cow. [N. Y.] 266; Addison on Contracts [Am. Ed.] § 435; 1 Tiffany on Real Property, 119; Sims, Covenants, 108, and cases there collected). However this may be in this jurisdiction (see Webb v. Robbins, 77 Ala. 176; Leek v. Meeks, 74 South. 31[1]), this statute (32 Henry VIII) has been re-enacted or adopted by several of the American states (Sims, Covenants, pp. 74–100) and practically accepted as having application in this jurisdiction in Merchants' Ins. Co. & Deas v. Mazange, 22 Ala. 168, 177; Gilmer v. M. & M. Ry. Co., supra.

[11] In the instant case, after Dothan Hardware Company ceased to exist and its lands were purchased at judicial sale by Malone Bros. (the doctrine of caveat emptor applying at such sale, Bland v. Bowie, 53 Ala. 152; Fore v. McKenzie, 58 Ala. 115; Clemmons v. Cox, 114 Ala. 350, 21 South. 426; Winter v. Montgomery, 169 Ala. 628, 53 South. 905; Ames v. Slocomb Co., 166 Ala. 99, 51 South. 994) it could not be held that, as such purchasers, they become assignees of the lease, so as to subject them to its full burdens and to endow them with its full benefits. As we have observed, to so hold would impose on the Malones and their assigns the burden of shipping and receiving all of their freight used in any of their other businesses, without regard to location, over the line of railroad controlled and operated by the said railroad company, to and from points reached by such line of railroad and its "connecting line or roads," under the conditions stipulated in the lease. As such purchasers, Malone Bros.. were not the assignees of all the terms of the lease; they occupied no such position in relation to the leasehold estate, as that equity would compel them to take an assignment. There was no privity of contract (Woods v. Ayres, 39 Mich. 345, 350, 33 Am. Rep. 396; Hartley v. Phillips, 198 Pa. 9, 47 Atl. 929), nor privity of estate (Dinkins v. Latham, 79 South. 493;[2] Patton

---

[1] 199 Ala. 89.  [2] Ante, p. 101.

v. Pitts, 80 Ala. 373; Leek v. Meeks, 74 South. 31, 32;[3] McDonald & Co. v. Gregory, 41 Iowa, 513). As stated, the possession of the easement by Malone Bros. or their assignee, over the lands of Patterson and the Dothan Foundry & Machine Company, after the contract period of one year, was merely permissive, and the use by Malone Bros. did not operate to bind them, at least to the observance of the collateral covenants, as to shipping and receiving all their freights used in their several businesses and as to exonerating the company from liability for fire damage to buildings and structures belonging to parties of second part, or to third parties, wherever located. Webb v. Robbins, 77 Ala. 176; Adler & Co. v. Western Railway, 192 Ala. 507, 68 South. 361; Kettle, etc., Co. v. Eastern Ry. Co., 41 Minn. 461, 472, 43 N. W. 469, 6 L. R. A. 111.

That the covenants to ship and receive the indicated freights over roads beyond this defendant's line, to exonerate that company from liability for damages occurring to the second parties' other real properties and to certain of their personal properties, and to indemnify against "all such claims" that might be made by third parties, were merely personal, and not running with such lands demised, would not appear to require citation of authorities.

However, it is instructive to note the leading cases of Spencer v. Clark, supra, and Congleton v. Pattison, 10 East, 135. The Chief Justice, writing in Congleton's Case, declared of a covenant in which the assignee is specifically named that, though it were for a thing not in esse at the time, yet being specifically named, the covenant would bind the assignee "if it affected the nature, quality, or value of the thing demised, independently of collateral circumstances, or if it affected the mode of enjoying it." The covenant there construed was contained in a lease of lands with liberty to make a water course and erect a mill, and not to hire persons to work in the mill who were settled in other parishes without a parish certificate; held, that the covenant did not run with the land or bind the assignee of the lessee. Mr. Justice Bayley, concurring, said that in order to bind the assignee the covenant must either affect the land during the term, such as those in regard to the mode of occupation, or it must be such as per se, and not merely from collateral circumstances, affects the value of the land at the end of the term.

By way of illustration of one of the limitations pointed out in Spencer's Case, supra, the justice said:

"Suppose a covenant by the lessee to make a communication by water from the demised premises through other persons' lands to another place to facilitate the access to a market, the value of the reversion would be materially affected by the performance or non-performance of such a covenant; but it could not bind the assignee, because all the cases show that the assignee is not bound unless the thing to be done is upon the land demised."

In the instant case, the communication by rail from the demised premises of the Dothan Hardware Company purchased at judicial sale by Malone Bros. and Dothan Grocery Company, was through the lands of Dothan Foundry & Machine Company and M. J. Patterson, for the shipment of freight to and from distant points and over other railroads and lands, and this limited use within the contract period did not affect "the value of the lands at the end of the term." If the conveyance had been by the Dothan Hardware Company to the present owners (rather than by decree and a sale thereunder), as such assignees they would not be bound, because the thing covenanted to be done was not to be wholly done on the lands demised, but on and over other ways from distant shipping points, and involved freights emanating and proceeding from and to other businesses in which the parties of the second part were or might be engaged, not located on the spur track. So of the agreement to exonerate against fire damages. It would appear that an exception is presented in plaintiff's behalf under the covenants, in the independent collateral agreement to ship and receive freight from other points than those on defendant's line or railroad and over the lines and connecting lines of the party of the first part, used in the business of the second parties, whether such business be located on or off the spur track, and to exonerate from liability for damages by fire (the result of the railroad company's negligence) to the buildings and structures of the second parties, or of third parties located on other lands than those over which the spur track was laid.

This conclusion is supported by our cases on the subject. In McMahon v. Williams, 79 Ala. 288, the covenant prevented the grantees, their heirs and assigns, from opening across the premises conveyed any public railway landing or from erecting thereon a public warehouse; this right was reserved to the grantor, his heirs and assigns, to be exercised in such manner as not to interfere with the material business of the original grantees or their assigns. The holding was that the covenant created an easement affecting the dominant estate to which the right was "accessorial," and became a servient estate upon which the specific burden or charge was fixed, and that subpurchasers took the fee expressly burdened with this servitude. The justice observed of such grants or reservations that—

"Whether a deed confers a personal right merely, or one appurtenant to the premises, must be ascertained from the terms of the deed itself, if it speaks anything to the point; or, if

not, by the situation of the contracting parties and the surrounding circumstances."

In Gilmer v. M. & M. Ry. Co., 79 Ala. 569, 572, 573, 58 Am. Rep. 623, the covenant in consideration of the grant of a right of way through plaintiff's land was that the company would erect a flag station at a convenient point to plaintiff's house, would permit him to cultivate the lands embraced in the grant not needed for the use of the railway company, and, if a depot should be built, would not permit the sale of ardent spirits. Such covenant was held binding on an assignee with notice.

The difficulties, attending the construction of covenants were referred to by Mr. Justice Somerville, who said:

"The subject is one full of intricate learning, and the decisions of the courts touching it are greatly conflicting, and far from satisfactory. Among those, however, which have been decided to follow the realty into the hands of an assignee, are covenants of warranty and for quiet enjoyment, covenants by tenants to pay rent, to repair, maintain fences, reside on the premises, or cultivate the demised lands in a particular manner; not to carry on a particular trade on the premises leased or purchased; not to build on adjacent premises; and many others of an analogous character. Among those adjudged to be personal, and not therefore to touch or concern the land, are covenants made by owners of land between whom and the covenantee there is no privity or title or estate; a covenant not to hire persons of a certain description to work in a mill; or a covenant with a stranger not to permit a gristmill to be erected on the owner's premises; a covenant by the vendor of lands not to permit marl to be sold from adjoining lands; by a lessee of a house to pay so much for every tun of wine sold in the house; or to buy all beer used by him from his lessors or from his successors in trade. Law of Real Property (Boone) § 317; 1 Addison, Contr. § 436; 2 Greenl. Ev. § 240; 1 Parsons' Contr. 231–233." 2 Elliott on Contracts, § 1448 et seq.

The first exception to the statute announced in Spencer's Case was recognized in the statement just quoted, to the effect that the covenant touched and concerned the land itself, and was not collateral to it, because it was to be performed on it, and affected the value of the adjacent land of the grantor, being greatly beneficial to it, and was in the nature of compensation by way of rent for the land conveyed; no other consideration having been paid therefor than that which was confessedly nominal. Its performance or nonperformance affected the mode of enjoyment of the granted premises, and their value or quality, so as to render the title acquired by the vendee a subordinate one, and this is one of the tests by which to decide whether the covenant is inherent in the land itself. Gilmer v. M. & M. Ry. Co., supra.

In Webb v. Robbins, 77 Ala. 176, the covenants were contained in a deed and a bond, executed at one time, relating to the same land and its use. The condition was that the grantees, for themselves and their executors, administrators, or assigns, would not permit or allow any warehouse or place for shipping or receiving any goods either upon or through said premises, and that they would allow the grantor, freely and unmolested, to use said premises for the delivery of spars and lumber; held a covenant running with the land. Chief Justice Stone said:

"We are convinced that Webb, before the trade was concluded, if not before it was entered upon, knew the nature of the obligation, and that he acted on the belief—possibly on advice—that such obligation inured to the benefit of R. H. Gregg alone, and only bound Smith and McLeod, and that it could not operate for or against any other person, succeeding to the ownership of the several parcels of land. It is clearly competent, in making a sale of real estate, to retain an easement or servitude in the lands sold; * * * as a privilege or easement in the estate of the grantor, in whose favor the limitation is imposed. This easement and this disability follow the several parcels of land, into whose hands soever they may pass, with notice, actual or constructive, of their existence." Webb v. Jones, 163 Ala. 637, 50 South. 887.

See, also, recent cases of Adler & Co. v. Western Ry., 192 Ala. 507, 68 South. 361; Leek v. Meeks, 74 South. 31;[4] Jebeles, etc., Co. v. Brown, 147 Ala. 593, 598, 41 South. 626, 11 Ann. Cas. 525.

Where such contracts are left to construction because of equivocal clauses or covenants, there arise difficulties which have been often referred to by courts and text-writers. Mr. Tiffany (1 Modern Law of Real Property, p. 117) and Mr. Sims are of opinion that no positive rule is deducible from the decisions, whereby to determine whether a particular covenant touches or concerns the land demised; that that is a question which each judge must decide for himself, "just as he decides that a piece of evidence is admissible as logically bearing upon the subject." Sims, Covenants, p. 109. However, the doctrine of our cases is that the intent and interest of the parties will be gathered from the instrument "if it speaks anything to the point; or, if not, by the situation of the contracting parties and the surrounding circumstances." McMahon v. Williams, supra, 79 Ala. 291; S. A. L. Ry. Co. v. Anniston Mfg. Co., 186 Ala. 264, 65 South. 187; Weil v. Hill, 193 Ala. 407, 411, 69 South. 438; Jones v. Alder, 175 Ala. 80, 56 South. 577; Masterson v. Phinizy, 56 Ala. 336. Otherwise stated: In Peck v. Conway, 119 Mass. 546, whether an easement is a personal right, or is appurtenant to some other estate, was said to be determinable by a "fair interpretation of the grant or reservation creating

[4] 199 Ala. 39.

the easement, aided, if necessary, by the situation of the property and the surrounding circumstances." Dennis v. Wilson, 107 Mass. 591, 593; Green v. Putnam, 8 Cush. (Mass.) 21, 25, 26; Peden v. Chicago Ry. Co., 73 Iowa, 328, 35 N. W. 424, 5 Am. St. Rep. 680; A., K. & N. Ry. Co. v. McKinney, 124 Ga. 929, 934, 53 S. E. 701, 6 L. R. A. (N. S.) 436, 110 Am. St. Rep. 215; 11 Cyc. 1051.

The just and reasonable construction of the contract compels to a different conclusion than that finding expression in the judgment of the trial court. Neither Malone Bros. nor the Dothan Grocery Company was a party necessary to join in the notice of termination given the railroad company; the notice given was sufficient as one requiring the company to terminate the contract in question and to discontinue its service over the spur track and over plaintiff's lands, and protected said company.

The judgment of the circuit court is reversed. The cause having been tried on an agreed statement of fact, in accordance with the usual course in such matters, a judgment is here rendered in favor of the plaintiff for the land sued for.

Reversed and rendered.

ANDERSON, C. J., and McCLELLAN and MAYFIELD, JJ., concur in result.

SOMERVILLE and GARDNER, JJ., concur in opinion.

SAYRE, J., dissents.

MAYFIELD, J. I concur in the reversal and rendition of the judgment in the court below. I concur in the opinion of Justice THOMAS, in so far as it holds the contract in question was at an end, and all agreements and covenants therein terminated, before this suit was brought.

I do not concur in other parts of the opinion, as to whether or not the covenants created by the contract ran with, or did not run with, the land. I do not desire to commit myself on this question, because I do not believe it necessary to now decide it. I am of the opinion that question was not before the lower court, and therefore not before this court.

[12] As I interpret the contract, it fixed its own duration at one year, and by express terms provided the only mode by which it could be renewed, and the record shows it was never so renewed. The mere fact that the railroad track was continued to be used by some or all of the parties after the expiration of the life of the contract, without a renewal thereof in the mode provided by the contract, does not serve to keep in force all the covenants and agreements created by the contract. This contract is not one to which we should apply the doctrine or rules of law which presume a tenancy at will, or for years, or by the month, from the mere fact of holding over after the expiration of the time specified.

[13] This contract should be construed as when it was made, and not as to conditions which may exist six or seven years thereafter. To construe it differently from what I construe it would have the effect of giving the railroad company, and the successors in title to some of the land, a perpetual easement and right of way over the lands of other parties to the contract, or an easement wholly at the will of the railroad company and its successors in rights. Surely the parties to this contract never contemplated or intended such a result. To hold them to such a result, the language used in the contract, and their acts under it, ought to be clear, certain, and unambiguous to that end.

[14, 15] It is very true that the parties are all sui juris, and are therefore bound by their contract; and if they have made for themselves a hard one, they should be required to live up to it. But to hold parties to a contract, almost, if not quite, unconscionable, the language used, and acts done under and in connection with it, must be clear and definite, and not uncertain. If susceptible of two constructions, one of which will prevent such ruinous results to the parties, that construction should be adopted rather than the one which would award "the pound of flesh."

[16] There is certainly no express language in this contract that it should exist six or seven years, or be in perpetuity, or at the will of one party only, or that it, with all its covenants and agreements, could be renewed and extended; by one or several of the parties, by merely refusing to terminate at the end of the time prescribed by the contract. No such language is to be found in the contract, nor do the acts of the parties under it necessarily require us to so imply or conclude from all the facts in the case; to the contrary, the contract is in writing, and is voluminous, and goes into details. It contains express provisions as to the life of the contract, which is fixed at one year. It has also express provisions as to how and when it can be renewed. There is absolutely no evidence that the contract was ever renewed in this mode or manner, at the time specified, or at any other time. The whole effect of the evidence on this subject is that, the railroad company, and some of the parties to the contract, continued to use the track after the expiration of the year, and no steps were taken to oust the railroad or some of the parties from its use for several years after the expiration of the time specified.

This, in my judgment, did not suffice to continue the contract in full force and effect, as if it had no time limit and if it did not provide in terms when and how it could be renewed.

The provisions of the contract, at or near the end of the thirteenth paragraph, as to the mode and manner of terminating it, can have no application now, for the manifest reason those provisions of necessity refer to a time when the contract was in force. The life of the contract was only one year from the making of it. The mode provided for renewing it only authorized its renewal for another term of one year. As before stated, there never was a renewal; but if there had been, or if one be inferred or implied, it would be for a year only. Hence, the provisions as for the termination necessarily refer to the time when the contract was in force. A fair construction of the contract leads to the conclusion that its entire life could not by any means be longer than two years from its date. Of course, the parties to this contract could, by the consent of all the parties, have abandoned it, and have made a new one, or modified the original; but there is no evidence that they ever did or attempted so to do, either in writing or by parol. The mere fact that the track was used by some or all of the parties after the life of the contract did not revive the contract with all its provisions, and make it one in perpetuity, or at the will of one party only.

It results that the contract in question afforded no defense to this action of ejectment, because it had expired by virtue of its own limitations, long before the action was brought. If the defendant has any rights in and to the premises, they arise from some other source, and not from this contract. As this contract was the only source relied upon by defendants to show title or right to occupy the premises, it follows that it had none, and the judgment should have been rendered for the plaintiff.

ANDERSON, C. J., and McCLELLAN, J., concur.